PEOPLE *v.* HOOVER.

1. CRIMINAL LAW—CHARGE OF TAKING INDECENT LIBERTIES NECESSARILY INCLUDES ASSAULT.

   An assault is necessarily included in a charge of taking indecent liberties with the person of a female child.

2. SAME—DEFENDANT CONVICTED OF SIMPLE ASSAULT NOT HARMED BY FAILURE TO INSTRUCT THEREON WHERE CHARGED WITH TAKING INDECENT LIBERTIES.

   In a prosecution for taking indecent liberties with the person of a female child, defendant, who was convicted of simple assault, was not harmed by the failure of the court to instruct the jury that they might so find him guilty of assault, which was the least offense involved.

3. SAME—ARGUMENT OF PROSECUTOR PREJUDICIAL.

   Argument of the prosecutor which appealed to the personal resentment of the jurors, suggested unwarranted inferences to be drawn from the legitimate vocations of defendant, and urged consideration of a case not on trial constituted reversible error.

4. SAME—OBJECTION TO ARGUMENT SHOULD BE MADE AT TIME.

   Objection to argument should be made at the time, and a ruling had, in order to correct the error; but defendant should not lose his right to complain thereof, where the attorneys agreed, in the presence of the court, to depart from the proper practice, and that exceptions be taken at the close of the argument.

5. SAME—NEW TRIAL—WEIGHT OF EVIDENCE.

   A conviction of assault under evidence that would have justified conviction of taking indecent liberties cannot be said to be against the weight of the evidence.

Error to Monroe; Root (Jesse H.), J.   Submitted June 14, 1928.   (Docket No. 123, Calendar No. 33,661.)   Decided July 24, 1928.

Keith Hoover was convicted of a simple assault, and

Reversal of conviction because of unfair or irrelevant argument or statement of facts by prosecuting attorney, see annotation in 46 L. R. A. 641.

sentenced to imprisonment for seven months in the Detroit house of correction.    Reversed.

*Golden & Nadeau,* for appellant.

*Wilber M. Brucker,* Attorney General, and *Edgar G. Gordon,* Prosecuting Attorney, for the people.

WIEST, J.    Defendant was convicted of "simple assault," under an information charging him with taking indecent liberties with the person of a female child under the age of 14 years, without committing or intending to commit the crime of rape.    It was claimed the crime was committed in the haymow of defendant's barn at about 5 o'clock in the afternoon of Friday, October 22, 1926.    Defendant denied the charge and also made the defense of *alibi.*    Review is had by writ of error.

An assault was necessarily included in the charge as laid, but it is said that the trial judge did not so instruct the jury.    The instruction given covered the major offense, and included the minor offense of assault and battery.    We find no request upon the subject of assault.    Defendant was convicted of the least offense involved in the charge and has not been harmed by the failure of the court to advise the jury that they might do just what they did do.    It is also urged that, under the proofs, defendant was either guilty of taking indecent liberties or not guilty of any offense.    This argument has been made before, but not with success.    *People* v. *Martin,* 208 Mich. 109; *People* v. *Garner,* 211 Mich. 44.    The verdict may be illogical, and was characterized by the trial judge, in denying a motion for a new trial, as unsatisfactory to the people and to defendant.    Defendant, however, cannot complain.

It was the claim of the prosecution that defendant took indecent liberties with two girls on the occasion

charged.    Of course, the prosecution was for taking indecent liberties with but one girl.

Error is assigned upon the following argument of the prosecutor:

"I am going to ask you one other hypothetical thing or picture another situation and say—What if it was Tamara's case that was being prosecuted at this time? What if we were prosecuting the Jurgenson case?    Oh, you may say, that might be a whole lot different.    That girl didn't get any disease anywhere, that would be a different case.    How would it be different?    You have the same testimony and for that reason how could anybody suggest that you switch away from the testimony of girl?    They don't argue a word about Tamara's testimony; they keep still about that.    Let's talk about it as if it were her. case, it would be the same case.    Would you say she was a bad girl?    Is there any evidence that she was bad and not to be believed?    Is there any reason why she told that this happened to herself, that is not true.    Why couldn't she leave out herself and say that it hadn't happened to her and to say that he did it to the other girl?    Figure it out any way you want to and it comes back to the same matter, that if we were trying her case would you believe her any more readily that you do not?    Then why not believe her now?    *    *    *

"Why are we here?    We are here to suppress crime. That is the purpose of all criminal law.    Mr. Golden was careful to ask you men if you had read the stuff in the papers about the duties of jurors in respect to stopping crime.    What of it?    If you had read it, because you have honestly read and become interested in the stopping of crime?    What harm is there in that?    What is the effect on society, on Bedford township, on Monroe county, Michigan, if a guilty man be acquitted by a jury in a case of this sort?    Every mother and girl, every brother and father should have an interest in such cases.    What about it if they were your girls?    I am not trying. to bring prejudice in this case, but I say it is an important matter.    Suppose it happened to one of your children?    I put it the other way:    Supposing it happened in your immediate neighborhood, in your township where your own children are in the same environment going to the

same school, then you are real interested to come here and listen and you want to know what is going to become of such things and whether they are going to stop, don't you?    And you as jurors are now officers of this court and of the State of Michigan for these purposes, etc.

"I want to ask you, What has been done to the future of these girls?    I want to ask you what has been done to their future and then ask you whether or not he has done it?    Of course, we are trying one case. I am not trying to intimate that we are trying two cases; we are trying one case and the testimony of both girls apply to it.    First of all, they have been shocked.    Would you want a child of yours shocked that way?    *    *    *

"What is this man?    One of the things they said that he had some connection with law and justice, I don't know why.    I don't know what kind of a man he was, but I do know what happened on this Friday. Then they said he was an auctioneer.    What type of man does it take to be an auctioneer?    It takes brass, it takes some, sure.    Not everybody wants to be an auctioneer.    I wonder how many of you men ever aspired to be an auctioneer?    Why didn't you follow them up?    He is a cattle breeder, his mind is on breeding and sexual matters.    It could be, you have a right to inquire into these things.    You have a right to inquire into his conduct in court, and ask if it is the same as it is on the auctioneer's block. Most men would be ashamed of facing a trial, most men—it would cause most men to keep in their seat. Then take things soberly.    Was the thing taken soberly by him.    Yes, when his *alibi* began to come in the man's complexion, the complexion of the defendant changed from white to red, red color and stayed that way throughout the rest of the trial; that opened a different role.    I'll tell you the auctioneer's jesting frame of mind was on sexual matters and intent on the role of cowardice."

This was an appeal to the personal resentment of the jurors, suggested unwarranted inferences to be drawn from the legitimate vocations of defendant, urged consideration of a case not on trial, and constituted reversible error.

During the argument of the prosecutor the record shows the following:

"*Mr. Golden:* I want to object to what the school board heard outside of this case, Mr. McCormick; take the rest of the argument; if Mr. Gordon will agree to it, we can take exceptions at the end of the argument.

"*Mr. Gordon:* Yes, you may; yes, you can take them if you wish."

At the close of the argument of the prosecutor exceptions were noted.

We do not approve of the practice agreed upon by counsel, for we have repeatedly held that an objection to argument should be made at the time, and a ruling had, in order to correct the error, and, if not at once covered by instruction, that a request to charge be made; but we do not think defendant should lose his right to complain because the proper practice was departed from by agreement of the attorneys and presumably in the presence of the court.

In the circuit a new trial was asked on the ground that the verdict was against the great weight of the evidence and there was no evidence to sustain the verdict of simple assault.    The motion was denied. Had the jury found defendant guilty of taking indecent liberties, such a verdict would have been supported by evidence, and we do not think that an acquittal, on that charge, and a conviction of assault, makes the verdict contrary to the evidence or against the weight thereof within the meaning of either term.    The verdict of assault, under evidence justifying taking indecent liberties, cannot be said to be against the weight of the evidence.

Other questions presented are not likely to arise upon a trial for an assault, and, therefore, need not be discussed.

Conviction reversed, and new trial granted.

FEAD, C. J., and NORTH, FELLOWS, CLARK, McDONALD, and SHARPE, JJ., concurred.    POTTER, J., did not sit.