UNITED STATES of America,
Plaintiff-Appellee,

v.

Rody Charles GREY, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Norman WILLIAMS, Defendant-Appellant.

Nos. 19501, 19502.

United States Court of Appeals,
Sixth Circuit.

Feb. 24, 1970.

---

James Slater Gibson, Toledo, Ohio, for appellants.

Peter M. Handwork, Toledo, Ohio, Robert B. Krupansky, U. S. Atty., William M. Connelly, Asst. U. S. Atty., Toledo, Ohio, on the brief, for appellee.

Before EDWARDS and McCREE, Circuit Judges, and WILSON,* District Judge.

EDWARDS, Circuit Judge.

These are direct appeals after jury trial in the United States District Court for the Northern District of Ohio, Western Division. Appellant Williams was charged with armed robbery of the Spicer Federal Credit Union of Toledo on November 21, 1968, in violation of 18 U.S.C. § 2113(d) (1964). He was found guilty and sentenced to twenty years.

Appellant Grey was charged with aiding and abetting in the same bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(d) (1964). He was found guilty and sentenced to ten years.

The robbery by one armed man occurred on November 21, 1968, at about 1:15 p.m. A Credit Union teller testified that defendant Grey had been in the office that morning at between 10:00 and 10:30 a.m. to look at the "Blue Book" (a book used to determine the market value of used cars). She also testified that defendant Williams came in to look at the "Blue Book" at

12:45 p.m. and returned at 1:15 p.m. with a mask covering part of his face and held up the office.

A stolen maroon and black Rambler automobile was used as the get-away car in the holdup. It was driven by a man other than Williams who was not otherwise identified.

A witness testified that she saw a car switch made in front of her house. A yellow car with a black top, which had been parked there, was driven off and a brown Rambler was left there with the motor running.

The defendants were arrested on warrants. The arresting officer testified that Williams, on arrest, and after warnings under the Miranda rule, was asked whether the officers could search his car, a yellow and black 1967 Cadillac. The officer testified that Williams agreed, gave him the keys, and told him that the car was located in a plant parking lot on the other side of town. A pair of gloves was seized and admitted in evidence. A bank book was seized on the person of Grey when he was arrested, but it was not introduced as evidence.

At trial Grey attributed a $500 deposit in his bank on the day after the robbery to "insurance proceeds." Government evidence tended to dispute the sufficiency of any recent insurance payment to account for this deposit.

FBI Agent Michalski testified that he advised Grey of his constitutional rights and that Grey admitted being in a "red" Rambler near the Credit Union on the day of the robbery.

The defendants offered alibi and character witnesses. Part of Williams' alibi was proof of a visit to the Kaiser Jeep Corporation where he signed in with the guard at 1:20 p.m. The government proved that the trip from the Credit Union to Kaiser took less than five minutes.

A character witness for Grey was asked by the United States Attorney

* Hon. Frank W. Wilson, United States District Judge for the Eastern District of Tennessee, sitting by designation.

whether he knew that Grey, a Negro, and a married man, was "running around with a white go-go dancer." This question was objected to and the District Judge overruled the objection and subsequently denied a motion for mistrial based on this issue.

We find no merit to the appellate issues presented on behalf of defendant Williams. There was very strong eyewitness testimony that Williams was the bandit. The government's testimony substantially destroyed Williams' attempted alibi. The record allowed a finding that the prosecution met its burden of proving that Williams knowingly and voluntarily agreed to a search of his car. Simmons v. Bomar, 349 F.2d 365 (6th Cir. 1965).

■ We recognize, of course, that the standard of proof pertaining to voluntariness of consent is a strict one when it is applied to consent to search alleged to have been given by one already in custody for crime. Unlike the District Judge who heard and denied the motion to suppress, we did not have the benefit of seeing and observing appellant Williams and Agent Michalski testify. But the transcript of the testimony given by each convinces us that there was good reason for the District Judge to discredit Williams' testimony as evasive and contradictory and to credit Agent Michalski's testimony. The fact that the car was found on a plant parking lot on the opposite side of town lends considerable support to Michalski's testimony that Williams both consented to the search and supplied the location of the car.

■ Additionally, if we were to assume that these facts did not satisfactorily meet the strict test of voluntariness to which we have referred, the only product of the search which was introduced into evidence was a pair of gloves, alleged to have been worn by Williams during the bank robbery. The quantum of specific and circumstantial proofs introduced by the prosecution in this case convinces us that if admission of these gloves were to be found erroneous, that such error could appropriately be declared harmless beyond reasonable doubt. Fed.R.Crim.P. 52(a).

■ As to Grey's appeal, the evidence is much less adequate to support the jury finding of guilty. There was evidence, of course, that Grey had been with Williams before and after the robbery, and as we have noted, Grey had a $500 cash deposit the day after the robbery as to which the explanation appears doubtful. But, of themselves, these indicia of possible guilt would not constitute proof beyond reasonable doubt.

Further, there appears to be no direct support in this record for any identification of Grey as being at or near the Spicer Credit Union at the time of the robbery. Grey's conviction if sustained, would have to rest in large measure on Grey's admission that he had been in a maroon Rambler near the Credit Union on the morning of the day in question.

■ Under these circumstances, the claim of deliberate injection of race prejudice in the United States Attorney's cross-examination of one of Grey's character witnesses takes on greater significance. We find no nonprejudicial explanation for the "white go-go dancer" question asked by the United States Attorney.

At best, the entire question was a magnificent irrelevance in a prosecution for bank robbery. No defense witness (character or otherwise) had put appellant's marital fidelity at issue. At worst, the gratuitous reference to the race of the go-go dancer may be read as a deliberate attempt to employ racial prejudice to strengthen the hand of the United States government. The United States needs and desires no such aid.

In Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the Supreme Court said:

"The United States Attorney is the representative not of an ordinary par-

## 1046

ty to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v. United States, *supra* at 88, 55 S.Ct. at 633.

■ Appeals to racial prejudice are foul blows and the courts of this country reject them. Where, as here, the facts are such as to indicate that such prejudicial tactics may have had a substantial influence upon the result of a trial, reversal for new trial is ordered. Ross v. United States, 180 F.2d 160 (6th Cir. 1950), cert. denied, 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952); Fontanello v. United States, 19 F.2d 921 (9th Cir. 1927); People v. Hill, 258 Mich. 79, 241 N.W. 873 (1932); People v. Hoover, 243 Mich. 534, 220 N.W. 702 (1928); Manning v. State, 195 Tenn. 94, 257 S.W.2d 6, 45 A.L.R.2d 299 (1953); Roland v. State, 137 Tenn. 663, 194 S.W. 1097 (1917). See also Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943); Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

The judgment of conviction in appellant Williams' case is affirmed. The judgment in appellant Grey's appeal is vacated and the case is remanded to the District Court for a new trial.