**Tom WITHERS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 78–5404.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1979.

Decided July 18, 1979.

Charles A. Asher, South Bend, Ind. (Court-appointed), for petitioner-appellant.

Patrick H. Molloy, U. S. Atty., Joseph L. Famularo, Asst. U. S. Atty., Lexington, Ky., for respondent-appellee.

Before EDWARDS, Chief Judge, and WEICK and CELEBREZZE, Circuit Judges.

EDWARDS, Chief Judge.

In this case two young black men, Tom Withers and Willie Lee Rembert, were convicted after jury trial before a District Judge in the Eastern District of Kentucky on charges of interstate kidnapping, and interstate transportation of a stolen motor

vehicle, in violation of 18 U.S.C. §§ 1201(a) and 2312 (1976). The sentences (25 years and 5 years concurrent) and the convictions were appealed to this court. The only appellate issue presented was a claim that the sentences were excessive in either the legal or the constitutional sense. This court affirmed by order which noted the severity of the sentences administered but affirmed them as being within the discretion of the District Judge.

On this present appeal by appellant Withers only from denial of a motion to vacate sentence under § 2255, entirely different arguments are advanced. The principal claim is prosecutorial misconduct on the part of the U.S. Attorney who tried the case for the government. Appellant claims that the prosecutor's closing jury argument made use of racial bias.

The principal witness for the government was Theodore F. Burdsall, a young white man who had picked up two young black strangers (Withers and Rembert) on a public street in Cincinnati. That sentence is about the only fact upon which all three of the immediate parties agreed. Burdsall's version of the events is that after he picked them up, the two young blacks kidnapped him at knife-point, took over control of his car, drove him to Kentucky and threatened him. He testified that he eventually escaped from them by running away when the car was stopped and getting a gas station operator to report the kidnapping to police.

A Kentucky highway patrolman testified that he received a radio report of the kidnapping and the fact that the car was headed south on I–75 away from Cincinnati. He testified to a high-speed chase, and to arresting the two, shooting one of them while he was lying on the ground after arrest because he "made the sudden gesture."

Defendants' testimony was that Burdsall picked them up, offered to show them the town, suggested their smoking marijuana,[1] and made a homosexual proposition to Rembert. Withers claimed that when these advances were refused and Burdsall became obviously under the influence of marijuana, they attempted to persuade him to take them back to Cincinnati. Not succeeding in this, Withers said he threatened to report Burdsall's possession of marijuana to the police and thereupon Burdsall suddenly ran away to a Shell service station.

The owner and attendant testified that Burdsall ran into their station stating that he had been kidnapped and robbed of his car. They said he appeared very disturbed and they called the police.

Although defendants' version of the events of the evening is not impossible, the police chase testimony makes it seem at least doubtful. The state policeman testified that when he saw defendants and chased and stopped them, they were headed south on I–75 Expressway away from Cincinnati. Defendants claimed that they had intended to return to Cincinnati but took the wrong entrance by mistake.

The sole issue in this appeal from denial of motion to vacate sentence under § 2255 concerns a portion of the closing argument to the jury which returned the guilty verdicts against appellant Withers for interstate kidnapping and car theft.

The principal disputed statement made by the U.S. Attorney in his closing jury argument was: "Not one white witness has been produced in this case that contradicts Mr. Burdsall's position in this case."

Everyone connected with this trial and post conviction hearing now agrees that the statement was error; but there agreement stops abruptly. The former U.S. Attorney who uttered the sentence says that it was "inadvertent" and that he doesn't "remember it." The District Judge who denied the § 2255 motion did so at least in part because he found "that the statement complained of was accidentally and unknowingly made by the United States Attorney, and had no tendency to mislead the jury or prejudice the defendant."

---

1. Quantities of marijuana were found in the trunk, the glove compartment and elsewhere in the car. No evidence linked the marijuana to defendants.

There is independent evidence to confirm some but not all important aspects of the opposing stories told by complainant Burdsall and by defendants Withers and Rembert. The record of the jury trial appears to this court to suggest strongly that the three principals (and perhaps all of the witnesses at this trial) were engaged in self-serving testimony designed to protect varying degrees of culpability. In this context we cannot deem harmless the obvious prosecutorial misconduct demonstrated by this record and as a consequence, we vacate the district court's denial of the § 2255 motion and remand for vacation of sentence and a new trial.

We measure the U.S. Attorney's argument against the undisputed standard set by the United States Supreme Court in *Berger v. United States* :

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934).

We note that many connected with this trial, including the jurors, testified before the District Judge on the hearing of the motion to vacate that they could not remember the "not one white witness" argument by the U.S. Attorney, and that the District Judge held that it was "accidental" and "unknowing" use of one word, viz., "white."

We do not, however, believe that the "white witness" comment can appropriately be so characterized. Immediately after it the U.S. Attorney continued to discuss race:

> Members of the jury, you were qualified in this case. We are not trying this case because these defendants are black. We are trying this case because of this crime. I don't want you to find them guilty because of that. I don't want you to even consider that reason, but I want you to consider truthfully what they did, and the violent acts and the seriousness of the offense.
>
> I can remember dates a little better than Mr. Moody. On December 4th right here, we were prosecuting a white fellow for very similar facts, under the same section of the statute. Make no question but what we do—and I resent it. I do resent it, and you should resent it, that we are prosecuting them because they are black.

The reference to the December 4 trial was not based upon any portion of this record and represents evidence dehors the record which was not subject to challenge or to cross-examination. It was wholly improper argument in itself and directly violated the last sentence of the quotation from the *Berger* case (see above). Additionally its nature strongly disputes the government's contention that the "not one white witness" comment was inadvertent. The U.S. Attorney, five years later, may well not have remembered what he had said. But at the time he said it, he clearly had race on his mind and wanted the jury to think about what he said.

Not only was the "not one white witness" comment error, so too was the "December 4th . . . white fellow" trial comment.

And neither will be disregarded by this court because of failure of counsel to object. Together they represent "clear error" within the meaning of Rule 52(b), Federal Rules of Criminal Procedure.

The last issue we must discuss is the government's claim that all of the above notwithstanding, the errors were harmless in the context of this trial.

This court believes that it has the duty to require the United States Attorneys in this Circuit to follow the slogan carved in wood at the entrance to the office of the Attorney General of the United States: "The United States wins its point whenever justice is done its citizens in the courts." The U.S. Attorney in the courtroom is much more than just another lawyer. He speaks to the jury for the United States of America. His words carry the weight of his office. The United States above all parties should never proffer invidious comparison between races or argument founded on facts outside of the record. Such erroneous argument, because of its source, is much more likely to be accepted by a jury than is similarly objectionable argument by a private practitioner.

Prosecutorial abuse does not always require vacating a jury verdict and remand for a new trial. We weigh "harmless" error under the standards of *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976), where the court said:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.

534 F.2d at 679 (citations omitted).

It is the judgment of this court that the racial comments of the U.S. Attorney cannot appropriately under the facts of this case be termed "harmless" under Rule 52(a), Federal Rules of Criminal Procedure. While the proofs relied upon by the government were strong enough to sustain the jury verdict, this was not an open and shut case. And here the comment went directly to the issue of credibility of black witnesses as compared to white ones. This court has previously warned about employment of appeals to racial prejudice and reversed for new trial when such episodes were found:

> Appeals to racial prejudice are foul blows and the courts of this country reject them. Where, as here, the facts are such as to indicate that such prejudicial tactics may have had a substantial influence upon the result of a trial, reversal for new trial is ordered. *Ross v. United States*, 180 F.2d 160 (6th Cir. 1950), cert. denied, 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952).

*United States v. Grey*, 422 F.2d 1043, 1046 (6th Cir.), *cert. denied*, 400 U.S. 967, 91 S.Ct. 380, 27 L.Ed.2d 387 (1970). *See also Johnson v. Rose*, 546 F.2d 678 (6th Cir. 1976).

In addition, in this case we deal with a federal prosecution where the offending argument was uttered in the name of the United States government. In such a situation our duty to exercise superintending control of federal trials in the interest of justice requires us to employ the only corrective power available to the appellate courts. See *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1958). Our decision does not end this prosecution. It simply requires that it be accomplished under equal protection of the law.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.