UNITED STATES, Appellee,

v.

Specialist Charles H. THOMPSON,
237–04–5921, United States
Army, Appellant.

ACMR 9200511.

U.S. Army Court of Military Review.

27 Aug. 1993.

Squires, Jr., JAGC, Lieutenant Colonel James H. Weise, JAGC, Captain Robin N. Swope, JAGC, Captain Robert L. Carey, JAGC, Captain Kurt J. Mayer, JAGC (on brief).

For Appellee: Captain Glenn L. Kirschner, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before the Court Sitting En Banc.

## OPINION OF THE COURT ON RECONSIDERATION

GONZALES, Judge:

Pursuant to his pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of three specifications of wrongful distribution of cocaine and one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private E1.

On appeal, the appellant asserted that the trial counsel's argument on sentencing was racist and improper to such an extent that this court should set aside the sentence and order a rehearing. This court heard oral argument on 30 March 1993, and issued an opinion on 18 May 1993. The opinion was subsequently vacated upon our granting of a request for reconsideration by the government. This court, sitting *en banc*, finds that the trial counsel's comments during his argument on sentencing were clearly racial in nature; that the issue was not waived by the trial defense counsel's failure to object, because the unjustified interjection of race into the trial proceedings was "plain error"; and that such an error seriously affected the fairness, integrity, and public reputation of the appellant's court-martial. Accordingly, we hold that a rehearing on sentencing is warranted.

For Appellant: Captain Victor A. Tall, JAGC (argued); Colonel Malcolm H.

During his argument on sentencing, the trial counsel made the following statement concerning the appellant's predisposition to commit the drug offenses:

Was he predisposed to do this? The government says, "Yes." This is in his background somewhere. This is his attraction to it. It is his nice car. It is that stereotypic view of what the good life is, Boyz in the Hood—drug dealing—sorry to say, the black male and the black population. But nevertheless, it is that look, it is that gold chain, it is that nice car that epitomizes a successful individual.

The trial defense counsel did not object to the racial comments and the military judge did not *sua sponte* stop or, at the conclusion of the trial counsel's argument, indicate that he would disregard these specific remarks. He did, however, note another error in the trial counsel's argument and stated on the record that he would not consider those remarks.[1]

In her post-trial submissions to the convening authority, pursuant to Rule for Courts–Martial 1106 [hereinafter R.C.M.], the trial defense counsel noted that the staff judge advocate's recommendation failed to address "highly prejudicial and racially inflammatory remarks made by the trial counsel during [his] sentencing argument." She requested clemency for the appellant in the form of a "reduction in the confinement and from the stigma of a dishonorable discharge." The staff judge advocate's addendum to his recommendation stated that, in his view, the "trial counsel's argument, however inartful, was not intended to be and should not be viewed as racist." He further stated that, "[e]ven if the argument was erroneous, it did not prejudice a substantial right of the ac-

cused." In his opinion, the adjudged sentence was appropriate for the offenses committed and should be approved as it did not exceed the terms of the pretrial agreement.[2] The convening authority's memorandum in response to the foregoing indicated that he considered the staff judge advocate's recommendation and addendum, the trial defense counsel's response, and the appellant's petition for clemency before he took action.

■ While we doubt that the trial counsel intended for his remarks to be racist, that was clearly the result. The trial defense counsel should have objected. Failure to object to the propriety of a trial counsel's argument constitutes waiver of the issue on appeal, unless the error is "plain error." *United States v. McPhaul,* 22 M.J. 808, 813 (A.C.M.R.1986), *pet. denied,* 23 M.J. 266 (C.M.A.1986); *United States v. Carroll,* 34 M.J. 843, 844 (A.C.M.R.1992); R.C.M. 1001(g). Therefore, before this court can consider the assignment of error, we must first determine whether the error was "plain error."

■ Judge Cox, in writing for the Court of Military Appeals, has indicated that to constitute "plain error," the error must not only be both obvious and substantial, it must also have had an unfair prejudicial impact. *United States v. Fisher,* 21 M.J. 327, 328–29 (C.M.A.1986) (citing *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)); *United States v. Edwards,* 35 M.J. 351, 355 (C.M.A.1992); *see United States v. Smith,* 34 M.J. 894, 896 (N.M.C.M.R.1992). For an error to rise to the level of "plain error," the matter complained of must also "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young,* 470 U.S. 1, 15, 105

---

1. The stipulation of fact indicated that the appellant's second drug transaction occurred in his five-year-old (1987) Saab 900S. There was no evidence to suggest that there was any connection between the appellant's Saab and the offenses of which he was found guilty. After the trial counsel's argument on sentencing, the military judge *sua sponte* noted the absence of an evidentiary link between the appellant's offenses and his automobile. He indicated he would not consider in his sentence deliberation the references to the automobile that the trial counsel made in his argument.

2. The convening authority agreed to approve no sentence in excess of a dishonorable discharge, confinement for 72 months, forfeiture of all pay and allowances, and reduction to Private E1. He also agreed not to approve any adjudged fine.

S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citing *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *United States v. Doe,* 903 F.2d 16, 26 (D.C.Cir.1990); *United States v. Fisher,* 21 M.J. at 328. Plain error may exist if the error requires appellate intervention to (1) prevent "a miscarriage of justice," *or* (2) preserve "the reputation and integrity of the courts," *or* (3) protect "a fundamental right of the accused." *United States v. Beaudion,* 11 M.J. 838, 840 (A.C.M.R.1981) (citing *United States v. Sims,* 617 F.2d 1371, 1378 (9th Cir.1980), and *United States v. Kilburn,* 596 F.2d 928, 935 (10th Cir.), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979)).

The military rule for "plain error", as described above in *Fisher,* is substantially the same as the federal rule under Federal Rule of Criminal Procedure 52(b). Recently, the Supreme Court, in *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), clarified the federal rule for "plain error" review. Justice O'Connor stated that for "plain error" to exist under Rule 52(b), "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Id.* —— U.S. at ——, 113 S.Ct. at 1776. The Court also stated that Rule 52(b) "leaves the decision to correct the ... error within the sound discretion of the Court of Appeals, and th[at] court[s] should not exercise that discretion unless the error [also] 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citing *Young,* 470 U.S. at 15, 105 S.Ct. at 1046, and *Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392).

The Court was unequivocal in its explanation that the "error" must be a deviation from a legal rule and that the error must be "plain," meaning "clear" or "obvious." *Id.* —— U.S. at ——, 113 S.Ct. at 1777. The

Court left open, however, whether an error could "affect substantial rights" without a showing of prejudice. In this regard, the Court stated, "[t]here may be a special category of forfeited errors [3] that can be corrected regardless of their effect on the outcome, ... Normally, *although perhaps not in every case,* the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." *Id.* —— U.S. at ——, 113 S.Ct. at 1778 (emphasis added).[4] The Court did not provide an example of a "special category" case where a substantial right was affected, but where there was no showing of prejudice.[5] The Court also emphasized that before a judicial correction is ordered, the error should also satisfy the *Young* and *Atkinson* standard. *Id.* —— U.S. at ——, 113 S.Ct. at 1779.

■ Our review of these cases leads us to conclude that there is now a clear three-part test for finding "plain error." First, the matter complained of must be "error." Second, the error must be "plain." Third, the error must "affect substantial rights," with or without a showing of actual prejudice. We now apply this three-step process to the facts of this case.

■ Considering the first two parts of this test together, we must find that there was a deviation from a legal rule for there to be "error" and that the error was "clear" or "obvious." It is clear that a trial counsel should conduct himself with the same high standards in arguing to a military judge alone as he would in arguing to a court constituted with members. *United States v. Barnack,* 10 M.J. 799 (A.F.C.M.R.), *pet. denied,* 11 M.J. 292 (C.M.A.1981). It is axiomatic that counsel may argue, and the sentencing authority may consider, any reasonable inference from the evidence admitted at trial. *Unit-*

---

**3.** The Court distinguished between "forfeiture," the failure to make the timely assertion of a right, and "waiver," the "intentional relinquishment or abandonment of a known right." *Id.* at 1176. The waiver rule in the military incorporates both forfeiture and waiver. *See United States v. Toro,* 37 M.J. 313 (C.M.A.1993).

**4.** Altogether, the Court noted three types of error that could satisfy the "affect[s] substantial rights" requirement: (1) errors with prejudice, (2) errors absent a showing of prejudice, and (3) errors where prejudice is presumed.

**5.** Nor did the Court provide an example of a case where prejudice is presumed.

ed States v. Doctor, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); United States v. Stevens, 21 M.J. 649 (A.C.M.R.1985). A trial counsel is well within his rights to strike hard blows by forcefully commenting on the evidence presented at trial. However, at the same time he is not at liberty to strike foul ones. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); United States v. Waldrup, 30 M.J. 1126 (N.M.C.M.R.1989), pet. denied, 31 M.J. 383 (C.M.A.1990).

We reject outright the government's description of the trial counsel's remarks as "open to a number of interpretations," "a commentary of the possible motivations of the accused," and "merely a brief, cryptic reference to race." [6] Instead, we find that the comments on sentencing were clearly racial in nature. There was nothing in the appellant's background or in his responses during the providence inquiry, in his unsworn statement after findings, in his wife's testimony, in the two stipulations of expected testimony, in the stipulation of fact, or in the pretrial agreement that referred to the appellant as a black male selling cocaine to members of the black population, or possessing gold chains and a nice car, or his growing up in an inner city neighborhood environment similar to the one depicted in the movie, Boyz N The Hood. The trial counsel's interjection of the Boyz N The Hood analogy tended to portray a segment of the black population as drug dealers or drug users and that the appellant, as a black male, was a part of this culture of selling drugs to other black males in order to attain the good life symbolized by nice cars and gold chains.

This court does not approve of or condone an argument before any sentencing authority that includes racial comments under circumstances similar to those in this case. We find that the unjustified comments were a deviation from appropriate trial practice and, therefore, "error" that was both "clear" and "obvious."

 The third step for finding "plain error" is to determine whether the error

6. Government brief at pages 3, 4, and 6.

"affect[ed] substantial rights." We believe that the instant case is a prime example of the "special category" the Supreme Court had in mind in Olano, when it acknowledged that certain errors may "affect substantial rights" without a concomitant showing of prejudice. So basic to our jurisprudence is the right to a fair trial that it has been called "the most fundamental of all freedoms." Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965). From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). Racial remarks in a prosecutor's summation can constitute a violation of the defendant's right to a fair trial. United States ex rel. Haynes v. McKendrick, 481 F.2d 152, 156 (2nd Cir.1973). A prosecutor's argument that invokes race for a purpose that is either illogical or of very slight and uncertain logical validity is constitutionally impermissible and must be condemned whenever it appears. McFarland v. Smith, 611 F.2d 414, 419 (2nd Cir.1979).

The appellant had a substantial and fundamental right to a trial free of the improper consideration of race. Therefore, we find that the error "affect[ed] substantial rights." Accordingly, we hold that the three-part test for finding "plain error" has been satisfied and the issue is not waived.

 We now must determine whether this court should grant relief. Corrective action may be ordered, but only if the error also "seriously affect[ed] the fairness, integrity or public reputation of the [appellant's court-martial] proceedings." Olano, —— U.S. at ——, 113 S.Ct. at 1776. As discussed above, a racial remark in a sentencing argument may negate the defendant's right to be sentenced based on the evidence in the case and not on extraneous matters. Normally, in the absence of a clear showing to the contrary, we can pre-

sume that a military judge, sitting as the sentencing authority, can appropriately distinguish between proper and improper argument and consider only that which is proper. *United States v. Montgomery,* 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970); *United States v. Krzcuik,* 34 M.J. 1002, 1005 (A.C.M.R.1992). However, eleven years ago, this court held that when a trial counsel's argument on sentencing, before military judge alone, is so improper as to constitute "plain error," and the trial defense counsel fails to object, the military judge has an obligation to stop the argument *sua sponte. United States v. Brown,* 17 M.J. 987, 989 (A.C.M.R.), *pet. denied,* 19 M.J. 1 (C.M.A.1984). Furthermore, our brothers on the Navy–Marine Corps Court of Military Review have indicated that if a military judge's comments on a trial counsel's improper argument on sentencing are ambiguous, the sentence he adjudges as the sentencing authority will be considered tainted by the improper remarks. *United States v. Waldrup,* 30 M.J. at 1131–1133.

██ A trial must be kept free from substantial doubt with respect to its legality, fairness, and impartiality. A criminal justice system operates effectively only with public confidence and, naturally, that trust exists only if there also exists a belief that judges act fairly. *United States v. Stringer,* 5 U.S.C.M.A. 122, 17 C.M.R. 122 (1954). However, when the government's representative attempts to use race to infect the sentencing proceedings and that error goes uncorrected by the trial judge, it raises doubt as to the fairness and impartiality of his sentence. This doubt may be overcome if the military judge takes action to indicate that he was unaffected by the racial remarks. When a trial counsel uses racial comments as part of his sentencing argument without any legal justification, a trial judge is well-advised to react immediately by stopping counsel and condemning his argument or clearly and unambiguously indicating that he will not consider the improper racial remarks at the conclusion of the argument. *United States v. Brown,* 17 M.J. at 989; *United States v. Waldrup,* 30 M.J. at 1132. The trial judge in the instant case took appropriate remedial action, similar to what we have suggested above, on another error in the trial counsel's argument, as noted in footnote 1. However, we are left to wonder why he did not stop or take any curative measure on the racial remarks.

██ Furthermore, more than just harm to the individual is involved in the instant case. There is harm to the integrity of the criminal justice system. It has been noted by one court that the introduction of race into a trial helps further embed the already too deep impression in public consciousness that there are two standards of justice in the United States, one for whites and the other for blacks. *United States ex rel. Haynes v. McKendrick,* 481 F.2d at 157. The military justice system does not invite or encourage the appearance of duality and we will not allow even a hint of this impression to be associated with a court-martial proceeding. It is often not enough that the military justice system be fair. It must also be perceived as fair by those men and women who are subject to the UCMJ. *United States v. Jones,* 37 M.J. 321, 324 (C.M.A.1993). The Supreme Court has flatly stated that the Constitution prohibits racially-biased prosecutorial arguments. *McCleskey v. Kemp,* 481 U.S. 279, 309 n. 30, 107 S.Ct. 1756, 1776 n. 30, 95 L.Ed.2d 262 (1987). Appeals to racial prejudice are foul blows and the courts of this country must reject them. *United States v. Grey,* 422 F.2d 1043, 1046 (6th Cir.), *cert. denied, Williams v. United States,* 400 U.S. 967, 91 S.Ct. 380, 27 L.Ed.2d 387 (1970). The race of a criminal defendant must not be the basis of any adverse inference and any reference to race by a prosecutor must be sufficiently justified by the evidence to be countenanced. *McFarland v. Smith,* 611 F.2d at 417.

██ The Court of Military Review has supervisory power which may be invoked to preserve the fundamental integrity of the judicial system. *United States v. Davis,* 22 M.J. 651 (A.C.M.R.1986), 26 M.J. 39 (C.M.A.1988) (summary disposition); UCMJ art. 66, 10 U.S.C. § 866. In this case, the error did not directly affect the

appellant, but did affect the legality, fairness, impartiality, and integrity of his trial. In the interest of military justice, this court may set aside a sentence tainted by an improper argument. *See United States v. Reed,* 33 M.J. 98 (C.M.A.1991); *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A. 1991); *United States v. Brown,* 17 M.J. at 989; *United States v. Barnack,* 10 M.J. at 800; UCMJ art. 66(c). If this court cannot reasonably determine what sentence would have resulted absent the trial error, we should not reassess the sentence, but order a rehearing on the sentence. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986). The only proper remedy is to return the case for a sentence rehearing that is legal, fair, impartial, and upholds the integrity of the criminal justice system.

We also have considered the appellant's remaining assignments of error, including those personally raised by him pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and hold that none warrant additional relief.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Chief Judge GRAY, Senior Judge CREAN, Senior Judge WERNER, and Judge GRAVELLE concur.

Judge WALCZAK and Judge DELL'ORTO did not participate in the decision of this case.

BAKER,* Judge, with whom Senior Judge NAUGHTON * concurs, dissenting:

The decision of the majority announces a broad new rule defining plain error in a decision that stands for the proposition that

the sentencing phase of a court-martial must not only be fair and impartial, but also a work of art. We contend that being fair is in itself so difficult in a system where the least experienced do the trial work, that we should forego requiring perfection as determined from the remote and contemplative appellate bench.

We agree completely that the trial counsel's brief reference to stereotype race in his sentencing argument was improper. If intentional, it showed stupidity; if unintended, it showed extreme carelessness; and in either case it was unprofessional.[1] However, not every misstatement by counsel during the sentencing portion of the trial requires a rehearing.

The majority errs in finding this case to be an exception to the general rule for plain error announced in *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Rather than work within the general rule requiring a showing of prejudice, this court now adopts one clause from that case, "... although perhaps not in every case ..." to explain away not only the holding of *Olano,* but also Article 59(a) of the Uniform Code of Military Justice, 10 U.S.C. § 859(a).

In this case we find no prejudice to the appellant, and I do not believe the majority can either. To justify their findings of plain error they have redefined the term, focusing on appearance rather than effect.[2] If there is no prejudice to the appellant, there is no sound legal basis for returning the case for a new sentencing hearing. To follow the majority is to adopt a new *per se* rule requiring politically correct speech by counsel, a rule more stringent than the remedies available to correct the presence of unlawful command influence.

---

* Judge James R. Baker and Senior Judge John F. Naughton took final action in this case prior to their retirement.

1. It is useful to read the entire argument at the Appendix to understand the minor role of the trial counsel's reference to race in his sentencing argument.

2. The appellant made a pretrial agreement with the convening authority to limit punishment to six years confinement, forfeiture of all pay and

allowances, a dishonorable discharge, and reduction to Private E1. That is exactly the sentence adjudged. Clearly the sentence was not disproportionate to the sentence anticipated by the parties, nor was it disproportionate to the offenses which carried a maximum confinement of 50 years. More significant to the issue of prejudicial impact on the military judge, the sentence was far less than the eleven years confinement requested by the trial counsel.

We would feel differently if this case had been tried before a court with members. But here there was a presumption the military judge knew the law. This was a judge alone trial with no objection to the offensive portion by the trial defense counsel and no corrective action by the convening authority who was aware of the offensive remarks.

The logical extension of the majority's holding is to have the military judges in judge alone trials make a general disclaimer at the beginning or end of each trial that in arriving at the sentence the court will disregard all errors of law committed by the parties during the trial without specifically addressing them.

The appellant has a right to a fair trial and in my opinion that is what he received. We would affirm.

## APPENDIX

TC: Yes, I do, sir. One day all of us sitting here will know what the breaking point is. We will find out what the lure of drugs is. Is it fancy cars? Is it a 1987 Saab? Saab. Everybody has a connotation of what Saab is. It's a symbol. It's a nice car. Is this the nice life we want to associate with drug use and drug possession and drug sales? Even if it was just one use, it was still a facilitation of a drug activity, a bad activity. But when do we know that there's that breakdown? We know there's an impact on society. We read about it everyday in the newspapers. We know about it in the military. Why else do we have urinalysis? Before us today there was a statement that this was poor judgment. It has come out of the accused's mouth repeatedly that this is poor judgment. His EER's and his NCOER's, they're good. But what does it tell us? It gives us a little bit more of figuring out where that breaking point was. Because at the time that he was serving at the Disciplinary Barracks as an instructor and as an assistant in supply, his EER, his first one, "Integrity and loyalty above reproach." His second one, "Epitomizes professionalism." His first NCOER,

"Committed to excellence." His second one, September of '89 through August of '90, that puts him at Fort Wainwright, "Vast potential when he applies himself." And here's our fifth NCOER, September 9th through July of '91, he's gone to the dogs. There's that break somewhere in there. Is it an overnight change? The government says, "No." Was he predisposed to do this? The government says, "Yes." This is in his background somewhere. This is his attraction to it. It is his nice car. It is that stereotypic view of what the good life is, Boyz in the Hood—drug dealing—sorry to say, the black male and the black population. But nevertheless, it is that look, it is that gold chain, it is that nice car that epitomizes a successful individual. Poor judgment? His first sale was on 24 January. His first use, according to him, was 24 January. And that was poor judgment on his behalf. However, we are now back to his field grade Article 15. One of the elements—one of the charges in there is disobeying a lawful order issued by his company commander to submit to a urinalysis. And why do you submit to a urinalysis? Well, one, it's an order. But why is the urinalysis there in the first place? To determine consumption of illegal contraband. That is its only purpose. And here we are, on 26 November he submitted a urinalysis. It came back from the testing laboratory filled with water. Why? If 24 January was his first incident of poor judgment, why is he now all the way back a month earlier, actually two months earlier, falsifying his urinalysis? There is something underlying in this. There is that breakdown that we're looking for a while back. Profit? Well, it's hard to say. Given cocaine—did someone give him cocaine? No. He actively participated in gathering it and he helped someone else gather it for themselves and their own use. It's documented. There's something underlying here. There's something to actually go in and punish this soldier where he will understand. Simply sitting here today and saying, "Well, I understand." Yes. He

does. He's being prosecuted and he's being convicted. As to the proper sentence, it's really hard to say what to do with it. I've sat for days trying to think about this. And one, the military urinalysis every other month, 10 percent, 20 percent, 100 percent. Is it honorable to take drugs? Absolutely not. Is it honorable to participate in the distribution of drugs? Absolutely not. Dishonorable discharge is the only way to go here. The only way. Implicit in that is a reduction to E–1. Specialist Thompson used to be an NCO. This is not implicit of our NCO corps. Specialist, certainly not implicit of our higher enlisted rank. This is not implicit of a good soldier, of a soldier that stands to wear the uniform. So we have dishonorable discharge, we have a reduction to E–1. The punishment, the sentence included in this. What are the aggravating factors that really go to the punishment? And the only punishment really here will be confinement. What did he really do wrong? Well, he contributed to what has been harming this nation and this Army for quite a while now. He's participated in the crime, and that crime is drugs. He both used and he both delivered. He brought drugs from the civilian community onto Fort Wainwright. He dealt drugs in a family quarters. He purchased his drugs for use in the transaction off-post, and it's stipulated in the stipulation of fact, within 1,000 feet of a school zone. And where that comes from—that comes from 21 United States Code 863. And that is the aggravating factor they look for in the federal sector and the civil sector. Because what is the heart of our future? And the heart of our future is our children. And if we are participating in drug negotiations and drug sales near our children, our elementary schools, then that really hits at the core of our society. And this is an individual that knows his dealer is within that protective zone for our future. And when that is violated, that really strikes home. And that will strike home to the Army, it will strike home to the year of the family, as the Army has just celebrated, and that will strike home to just about everybody with knowledge of this case and that may read about this case, because that is the true aggravating factor. It's the impact that is well into the future that this soldier has reaped. The government asks for a dishonorable discharge, reduction to E–1, implicit in that is total forfeitures, and confinement for 11 years. Thank you, sir.

De GIULIO, Senior Judge, with whom Senior Judge NAUGHTON also concurs, dissenting:

I agree with Judge Baker. I dissent, not because I believe that racial remarks in an argument should be condoned, but because I find no plain error in this case. This case was tried before a military judge sitting alone, Colonel Richard G. Mann. Colonel Mann has long had the reputation of being one of the Army's most experienced judges. As any judge, he is presumed to know the law and to follow it, absent evidence to the contrary. *See United States v. Mays,* 33 M.J. 455, 459 (C.M.A.1991); *United States v. Montgomery,* 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970). There is no evidence in this case that the military judge did not follow the law.

In my view, the majority has misapplied the plain error rule. We must presume the military judge applied the law here and did not consider the improper argument. There simply was no prejudice to appellant—no substantial right was affected. *See United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Plain error should be used only when a miscarriage of justice would otherwise result. *United States v. Causey,* 37 M.J. 308 (C.M.A.1993); *United States v. Fisher,* 21 M.J. 327, 329 (C.M.A.1986).[1] Contrary to

---

**1.** I note references to *United States v. Brown,* 17 M.J. 987, 989 (A.C.M.R.), *pet. denied,* 19 M.J. 1 (C.M.A.1984) and *United States v. Waldrup,* 30 M.J. 1126, 1131–1133 (N.M.C.M.R.1989), in *United States v. Thompson,* 37 M.J. 1023, 1027–1028 (A.C.M.R.1993). *Brown* was decided before *Fisher* clarified the plain error rule. It misapplies the plain error rule. It also concerns an argument on sentence of matters presented by an accused during the providence inquiry. The

the majority's bare assertions, this argument is not of a nature to "seriously affect the fairness, integrity or public reputation of the proceedings." *See United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Appellant in this case received a fair trial. Clearly, there has been no miscarriage of justice. The enhancement of the perception of fairness is not sufficient reason to reverse this case where there has been no prejudice to appellant. *See United States v. Jones*, 37 M.J. 321 (C.M.A.1993). This court's action in this case violates the prohibition of Article 59(a), UCMJ. As Chief Judge Suter appropriately wrote, "It is the type of judicial frolicking that erodes confidence in criminal law, military or civilian." *United States v. Epps*, 20 M.J. 534, 537 (A.C.M.R. 1985) (Suter, C.J. dissenting), *amended in part, reversed in part*, 25 M.J. 319 (C.M.A. 1987). I would affirm the findings of guilty and the sentence with a warning to practitioners that racial arguments, even unintended, have no place in trials by courts-martial.

JOHNSTON, Judge, dissenting:

I sympathize with the objective of the majority opinion, but I cannot agree with its reasoning. The majority opinion focuses on a small portion of the sentencing argument made by trial counsel and concludes that it was an unjustified interjection of race into the trial proceeding. The opinion ultimately assumes that *the argument* was plain error necessitating corrective action in the form of a rehearing on sentence. The opinion concedes, however, that the improper argument could have been cured by a comment from the military judge during trial. Thus, the real issue in this case is not the argument, but whether the lack of a curative comment by the military judge was plain error. Unfortunately, the majority opinion's application of the plain error doctrine is flawed in several particulars.

The plain error doctrine has three components: (1) that there was an error (i.e., deviation from a legal rule unless the rule has been waived); (2) that the error was plain (i.e., clear or obvious); and, (3) that the plain error affected "substantial rights" (in most cases this means prejudice: it must have affected the outcome). *See United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986). The doctrine "is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982).

In applying the plain error doctrine to the facts of this case, it should be noted that there was no error by the military judge. This case was tried before a military judge sitting alone as a court-martial. Heretofore, a military judge has not been required as a matter of law to explain on the record that he did not allow himself to be influenced by those portions of a sentencing hearing that are perceived by an appellate court to be improper. *See United States v. Thomas*, 31 M.J. 669, 673 (A.C.M.R.1990). Thus, there was no deviation by the military judge from a legal rule. Query: How can one apply the plain error doctrine to inaction by the military judge that was legally correct at the time of trial?

Second, the error by the judge, if any, was not "plain," (i.e., "clear and obvious"). Even if one assumes that the argument was racial in nature, it is not "clear and obvious" that the military judge had a *sua sponte* duty *to comment* on improper argu-

---

law in that area has changed since *Brown* was decided. *See United States v. Holt*, 27 M.J. 57 (C.M.A.1988). The sentence in *Brown* was reassessed "in an abundance of caution." *Brown*, 17 M.J. at 989. Thus *Brown* is of little or no precedential value. In *Waldrup*, the military judge commented that "[h]e agreed 'wholeheartedly with the comments of trial counsel con-

cerning the despicable nature of [appellant's] conduct in this case.'" *Waldrup*, 30 M.J. at 1132. Because of the military judge's comments in *Waldrup*, that court stated they were "unable to make ... a presumption [the military judge would disregard improper comment]." *Waldrup* supports the dissenting opinions in this case, rather than the majority.

ment *in this case without members.* *See United States v. Montgomery,* 20 U.S.C.M.A. 35, 42 C.M.R. 227 (C.M.A.1970); *United States v. Krzcuik,* 34 M.J. 1002, 1005 (A.C.M.R.1992). Case law may require the military judge to issue a curative instruction to members when an improper sentencing argument is made, but it is not "clear and obvious" that the judge must comment on the record when he acts as the sentencing authority.[1]

Third, there was no prejudice as to the sentence imposed. The appellant bears the burden of persuasion with respect to prejudice. *Olano,* —— U.S. ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).[2] He has not met that burden. I have no doubt that the military judge was not personally influenced in any way by the improper argument of trial counsel. Furthermore, I have no doubt when reviewing the record of trial that the sentence the military judge imposed on this accused was appropriate.

Fourth, the legal presumptions accorded to the military judge were not diminished merely because he addressed only one portion of an improper argument without a critique of the remainder. He may have thought that the racial comments by trial counsel were so insignificant that they did not need to be addressed on the record in this military judge alone guilty plea trial. The trial defense counsel apparently agreed at the time of trial, for she failed to object.[3] As the Court of Military Appeals recently noted, "[A]n omission [of the objection] on the part of trial defense counsel ... supports the inference that even if

erroneous, such allusions were deemed at the time to be of little consequence." *See United States v. Causey,* 37 M.J. at 311 (C.M.A.1993), (citing *United States v. Grandy,* 11 M.J. 270, 275 (C.M.A.1981)).

Finally, the new rule espoused by the majority opinion for application in military judge alone cases is bad policy. The unsophisticated yet observant trial defense counsel who objects to a sentencing argument that may contain unwarranted racial references may obtain a prophylactic curative comment for the record from the military judge. The crafty defense counsel under the same circumstances who chooses not to raise an objection may be rewarded by an appellate court with a rehearing on sentence. As a practical matter, a rehearing on sentence is likely to result in some relief, and may result in no punishment if a rehearing is impracticable. Thus, the majority opinion rewards gamesmanship: remain mute and one may obtain a rehearing—object and all one receives is a curative comment on the record.

---

**1.** The majority's reliance on *United States v. Brown,* 17 M.J. 987 (A.C.M.R.1984), for a contrary conclusion is misplaced. *Brown* addressed a military judge's purported *sua sponte* obligation *to stop* an egregious sentencing argument by trial counsel. The case at bar deals with the alleged failure of the military judge *to comment* about an improper argument.

Their citation to *United States v. Waldrup,* 30 M.J. 1126 (N.M.C.M.R.1984), is even more misleading. That case involved a military judge who said on the record that he agreed "wholeheartedly with the comments of trial counsel concerning the despicable nature of [appellant's] conduct." The Navy–Marine appellate court was unable to make the presumption that the judge would disregard improper argument because they found that he agreed with comments that were "clearly intended to incite [his] passions."

**2.** In *Olano* the Court concluded that the defendant respondents had not met their burden of showing prejudice. The Court did not consider whether the error, if prejudicial, would have warranted correction under the standard of *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) as "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings."

**3.** Failure to raise an objection before the court-martial is adjourned constitutes waiver. *See* R.C.M. 905(e).