**UNITED STATES, Appellee**

v.

**Private Henry T. GARLAND, Jr., 450–63–7513, United States Army, Appellant.**

**ACMR 9201819.**

U.S. Army Court of Military Review.

18 Feb. 1994.

For Appellant: Captain Clement B. Lewis, III JAGC (argued); David E. Wheeler, Es-

quire (on brief); Major James M. Heaton, JAGC, Major Robin L. Hall, JAGC, Captain Michael A. Egan, JAGC.

For Appellee: Captain Kenneth G. Wilson, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Joseph C. Swetnam, JAGC (on brief); Captain Glenn L. Kirschner, JAGC.

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge:

The appellant was tried by a general court-martial composed of both officer and enlisted members. Pursuant to his plea, he was found guilty of violating a lawful general regulation pertaining to barracks visitation, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1988) [hereinafter UCMJ]. Contrary to his pleas, he was also found guilty of rape, forcible sodomy, adultery, indecent assault, and indecent acts, in violation of Articles 120, 125, and 134, UCMJ. The convening authority approved the sentence adjudged by the court, which included a bad-conduct discharge, confinement for seven years, and forfeiture of all pay and allowances.

Before this court the appellant contends, inter alia, that his due process rights were violated when the assistant trial counsel made an inflammatory and racist argument on findings. He also argues that the military judge erred by improperly admitting evidence that the appellant had undergone a "rape kit" examination during a prior, unrelated investigation. We disagree and affirm.

### I.

This case involves a brutal sexual assault upon a twenty-year-old female soldier, perpetrated in the appellant's barracks room. The primary dispute on appeal is whether the assistant trial counsel's argument on findings constituted fair comment on the testimony of the appellant's squad leader, a defense witness. The squad leader testified that he was told the day after the incident by another defense witness that the victim and the appellant were observed by that witness kissing in the barracks parking lot earlier on the night of the assault. This second witness had testified at the trial, but was seriously impeached on cross-examination. The squad leader's corroboration was offered to rebut any allegation of recent fabrication. Neither witness had any direct knowledge of the charged offenses.

In order to impeach the squad leader's credibility, the assistant trial counsel attempted to show during cross-examination that he and the appellant were good friends, that he had supported the appellant on a prior Article 15 on the basis of disparate treatment, and that he visited the appellant several times while the appellant was in pretrial confinement.[1] During redirect examination, this witness also acknowledged that he and the appellant had experienced problems of a racial nature with various individuals in their company's chain of command. The racial climate in their company had upset them both, and the squad leader lamented, "[B]ut I guess that's how it's gonna be over there."

The assistant trial counsel's closing argument was, in a word, thorough. It comprised forty-six pages in the record of trial. Two of those pages contained the following language:

So what possible reason would [the squad leader] have to come into this court to lie? Members of the Panel, it's hard to figure out sometimes people's motives. But we'll talk more about that later. [The squad leader] is a noncommissioned officer with five years—anyway, he's a noncommissioned officer—[the squad leader] is. He's gone to the battalion commander complaining that this accused has been treated unfairly before. He's of the opinion that the accused has been treated unfairly throughout the company and that the company is messed up.

Now members of the panel, it's unfortunate sometimes that race has to be brought up as a bias in cases like that. There's no excuse for racism. It's something that we must address, however,

1. We would expect a military supervisor to visit one of his subordinates in pretrial confinement.

when it's present and try to eradicate it. The reason it's brought up in this case is the government's position that [the squad leader] was motivated to some degree because he feels that Private Garland has been treated unfairly because of his race. That's not to say that it's not a possibility, that maybe the accused has been treated unfairly before. We're not saying it is. I have no evidence one way or the other. And maybe [the squad leader] is completely justified in that belief. But that, members of the panel, is possibly what motivates [the squad leader] to come into this court to say that [the other witness] told him that he saw a kiss.

Why didn't this noncommissioned officer do something about it other than to tell just [the platoon leader]? Taking it up the chain. Shouldn't he have gone to CID? Shouldn't he have testified at an Article 32 Investigation? Now is the first time he has ever admitted that under oath, members of the panel. He also admitted he frequently visits the accused in jail. He also told you the first sergeant, current or past, has a grudge against this accused. Clearly, he's just a soldier with an axe to grind. Maybe in his mind or maybe even objectively he should be grinding that axe. But it doesn't give him an excuse to lie, members of the panel, and that's exactly what [the squad leader] did to try to get this accused out of trouble again.

The trial defense counsel made no objection, and during his argument on findings, which comprised fifty pages of the record of trial, he did not mention the squad leader or his testimony.

## II.

■ We are mindful of the proposition that racial remarks in a prosecutor's summation can constitute a violation of an accused's right to a fair trial, and that a prosecutor's argument that invokes race for a purpose that is either illogical or of very slight and uncertain logical validity is constitutionally impermissible. *United States ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2nd Cir.1973); *McFarland v. Smith*, 611 F.2d 414 (2nd Cir. 1979). It should also be clear that this court

will not tolerate unjustified interjection of race into court-martial proceedings, and that we will not hesitate to protect a soldier's substantial and fundamental right to a trial free of the improper consideration of race. *United States v. Thompson*, 37 M.J. 1023 (A.C.M.R.1993).

■ These comments, however, were neither inflammatory nor racist. Whether they constituted fair comment on the evidence is debatable. It certainly stretches the limits of logic to draw the inference proposed by the assistant trial counsel. The suggestion of bias on the part of the squad leader because he was friends with the appellant, sympathized with his plight as a victim of disparate treatment, perceived an unhealthy racial attitude among several members of their company's chain of command, or was simply loyal to a subordinate, is tenuous at best. But, even if the comments did exceed the bounds of permissible argument, the appellant would not be entitled to any relief on appeal.

■ A failure to object to the trial counsel's argument normally constitutes waiver of the issue on appeal, unless the argument amounts to plain error. Rule for Courts–Martial 919(c), *United States v. Causey*, 37 M.J. 308 (C.M.A.1993). To constitute plain error, the error must not only be obvious and substantial, it must also have had an unfair prejudicial impact on the jury's deliberations. *United States v. Fisher*, 21 M.J. 327 (C.M.A. 1986). The plain error doctrine is only "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Id.* at 328–29.

Although we would not characterize this argument as a shining example of outstanding trial advocacy, we find that the assistant trial counsel's comments had no effect on the outcome of the proceedings, and also hold that the remarks did not constitute plain error. The squad leader's corroborating testimony pertained to a matter that was clearly collateral in nature, and the defense counsel's failure to object, or even mention the testimony during his lengthy argument on findings, supports an inference that he also considered the matter to be of little consequence. Under these circumstances, the ap-

pellant is entitled to no relief. *United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

### III.

The appellant had been accused of a prior, unrelated rape that was severed from this trial pursuant to an unopposed defense motion. During the investigation of that separate allegation, the appellant had undergone a "rape kit" examination, which included fingernail scrapings and seizure of his bedsheets. This evidence was offered by the government to explain the appellant's actions on the morning after the offenses in this case were committed.

Around six o'clock that morning, shortly after learning that the military police were enroute to the barracks to investigate this rape allegation, the appellant borrowed his roommate's nail clippers and cut his fingernails in their bathroom. A friend who lived in the room next to the appellant testified that he was awakened by the appellant at about seven o'clock that morning, and that the appellant gave him bed sheets and a radio to hold for him.

The government's position was that the appellant clipped his fingernails and attempted to hide his bed linen in order to avoid detection, and that these acts demonstrated his consciousness of guilt under Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.]. The appellant contends that evidence of the prior rape investigation should not have been admitted, since the extreme prejudice which resulted to him substantially outweighed any probative value that this "virtually irrelevant" evidence might otherwise have had. *See* Mil.R.Evid. 403. The military judge, on the other hand, found this evidence "highly probative on the issue of consciousness of guilt." Although he acknowledged its prejudicial effect, he found that it did "not substantially outweigh the probative value." We agree with the judge, and note that he also gave a cautionary instruction on the limited purpose for which the evidence could properly be considered, in order to minimize the potential for prejudice.

We have considered the remaining assertions of error, including those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them also to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge GONZALES concur.