**UNITED STATES, Appellee,**

v.

**Lisa A. CAUSEY, Sergeant
U.S. Army, Appellant.**

No. 68,017.
CMR No. 9003030.

U.S. Court of Military Appeals.

Argued Feb. 2, 1993.

Decided Aug. 3, 1993.

For Appellant: *Captain Teresa Norris* (argued); *Lieutenant Colonel James H. Weise, Major Fran W. Walterhouse, Captain Timothy M. Lawlor* (on brief); *Colonel Robert B. Kirby* and *Captain Michael P. Moran.*

For Appellee: *Major Kenneth T. Grant* (argued); *Colonel Dayton M. Cramer* and *Lieutenant Colonel Joseph A. Russelburg* (on brief); *Captain Louis E. Peraertz.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted, contrary to her pleas, by a special court-martial consisting of two lieutenant colonels, two command sergeants-major, and a first sergeant, of using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced to a bad-conduct discharge, partial forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence except for the forfeitures, and the Court of Military Review affirmed in an unpublished opinion dated February 25, 1992. We granted appellant's petition on the following modified issue:

> WHETHER TRIAL COUNSEL ERRED WHEN SHE ASKED THE MEMBERS TO FIND APPELLANT GUILTY SO OTHER SOLDIERS WOULD BE DISSUADED FROM USING AN UNKNOWING INGESTION DEFENSE.

For the reasons discussed herein, we resolve this issue adversely to appellant.

### Facts

On July 23, 1990, appellant was selected to take part in a random urinalysis conducted by her company. The results of the chemical analysis of her sample revealed 41 nanograms per milliliter of marijuana derivative. Appellant did not challenge the procedures employed in the chain of custody or the results of the chemical analysis. Rather, her defense was one of innocent ingestion. Additionally, three witnesses testified to her good character.

Appellant testified that, after reviewing her own activities for more than a month preceding the urinalysis, she concluded that the only opportunity in which her food or drink might have been spiked was when she attended an off-post party given by her next-door neighbor in Killeen, Texas. She testified that she had known the neighbor for 5 months, that more than a hundred persons were invited to the party, and that the party was a birthday party for an individual whom she did not know. She also stated that she was not acquainted with any of the other individuals attending the party. Appellant thought the cocktail punch had been "spiked" because, after she had consumed three or four drinks of the punch, she became "tipsy." Appellant testified that she inquired of her neighbor as to who might have spiked the food or drink at the party. She explained that the neighbor told her she did not know because so many people had contributed to the smorgasbord. Appellant did not call her neighbor or any of the attendees at the party as a witness.

The Government introduced a stipulation of fact to refute appellant's claim of innocent ingestion. The parties stipulated that in order to produce a level of 41 nanograms per milliliter of marijuana derivative, as the chemical analysis of appellant's sample had revealed, a person would have to eat or drink three times as much marijuana than if it were smoked. The stipulation established that such a quantity appearing in food or drink would have been noticeable unless one was under the effects of another drug. Appellant did not believe any other food or drink could have been spiked during the relevant time frame because their consumption took place either at home or at restaurants.

The prosecution attempted to impeach appellant's three character witnesses because of their lack of knowledge of other instances of misconduct by appellant, including those that resulted in appellant's receiving several counseling statements. Defense counsel sought and obtained instructions from the judge limiting use of this evidence to impeachment of the character witnesses.

In commenting on appellant's defense of innocent ingestion, trial counsel argued during summation on the findings:

> What you've heard today is the brownie defense. It's a classic. It's been around as long as the Army has been conducting urinalysis. Now if you it buy [sic] here today, you're going to hear it a million times again back in your units....

For the first time on appeal, appellant now complains of this argument. Defense

counsel made no objection to it at trial, and the military judge gave no curative instruction. After argument, however, the judge properly instructed the court members that their decision must be based only upon the evidence and that "arguments of counsel are not evidence" in the case. He also emphasized to the members the presumption of innocence and the burden on the Government to prove beyond a reasonable doubt both the elements of the offense and a knowing, conscious use of marijuana by appellant.

### Discussion

Appellate defense counsel posited at oral argument that several impermissible meanings can be attached to the Government's argument: convict or others [millions] will use this defense to get away with drug use; convict or others will dare to plead not guilty; convict or your job as commander will be more difficult.

### A. Content of Argument

While the Code has no express provisions concerning the content of a closing argument, RCM 919(b), Manual for Courts-Martial, United States, 1984, provides, "Arguments may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory of the case." *See also* RCM 919(b), Discussion. Regulatory provisions, however, have limited counsel's arguments. Paragraph 5–8, Army Regulation 27–10, Military Justice (Dec. 22, 1989), applies the ABA Standards for Criminal Justice, including those relating to the Prosecution Function, except if the Rules are inconsistent with the Code, the Manual for Courts-Martial, or applicable departmental regulations. Standard 3–

5.8, 1 ABA Standards for Criminal Justice, The Prosecution Function at 3.87 to 3.88 (2d ed. 1986 Supp.), provides:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.[*]

*See also* 1 F. Gilligan and F. Lederer, *Court–Martial Procedure* § 5–52.00 at 189–91 (1991) (as to applicability of these Standards to the other services).

■ As Standard 3–5.8(d) indicates, it is improper to "divert" a jury from the evidence in the case by predicting "the consequences of the jury's verdict." Thus, it was inappropriate for the prosecution to argue that the defense of innocent ingestion should be rejected because of the consequence of hearing the same defense "a million times" from other soldiers when

---

* The new Standard 3–5.8, ABA Standards for Criminal Justice, The Prosecution Function (approved Feb. 3, 1992), provides:

(a) <u>In closing argument to the jury</u>, the prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor <u>should not</u> intentionally misstate the evidence or mislead the jury as to the inferences it may draw.

(b) The prosecutor <u>should not</u> express his or her personal belief or opinion as to the truth or

falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not <u>make</u> arguments calculated to <u>appeal to the</u> prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence.

[The underlined language was added. Subparagraph (e) was omitted.] 50 Crim.L.Rptr. 2067 (Mar. 4, 1992).

the members return to their units and their jobs as senior noncommissioned and commissioned officers. In effect, the prosecution argued that the innocent-ingestion defense should be rejected to discourage other soldiers from raising it. Moreover, it was improper to prey upon the personal interests of the court members as members of the military community and their concerns about the impact this defense may have on them in that role. *Cf. Viereck v. United States,* 318 U.S. 236, 247–48, 63 S.Ct. 561, 566–67, 87 L.Ed. 734 (1943) (improper to appeal to patriotism in time of war); *Taulbee v. Commonwealth,* 438 S.W.2d 777 (Ky.App.1969) (improper to ask for a conviction because defendant had "outsider" as lawyer).

Accordingly, we conclude that under the facts of this case trial counsel erred by asking the members to reject appellant's claim of innocent ingestion in order to dissuade other soldiers from raising the same defense. We next examine whether defense counsel's failure to object amounted to a waiver.

### ·B. Waiver

RCM 919(c) provides:

(c) *Waiver of objection to improper argument.* Failure to object to improper argument before the military judge begins to instruct the members on findings shall constitute waiver of the objection.

 The waiver rule places responsibility upon defense counsel to object so that appropriate instructions may be requested of and given by the military judge. This rule is designed, in part, to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. It is important "to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Frady,* 456 U.S 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).

It is trial defense counsel who can best view any allegation of error in the context of, as in this case, four sentences out of more than fifty sentences in the argument. As noted by the Supreme Court, "It is simply not possible for an appellate court to assess the seriousness of the claimed error" without "viewing ... the entire record." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985). As we have previously determined, "An omission [of the objection] on the part of trial defense counsel ... supports the inference that, even if erroneous, such allusions were deemed at the time to be of little consequence." *United States v. Grandy,* 11 MJ 270, 275 (CMA 1981). Here it is clear that trial defense counsel, for whatever reason, chose not to object to the Government's argument in summation. Thus, under the facts of this case we conclude that defense counsel's failure to object constituted waiver. However, we must now determine whether trial counsel's inappropriate argument amounted to plain error which would require reversal of appellant's conviction despite the absence of objection.

### C. Plain Error

 As we stated in *United States v. Fisher,* 21 MJ 327 (CMA 1986), "The plain error doctrine is invoked to rectify those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 328. The doctrine is only "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Id.* at 328–29, quoting *United States v. Frady,* 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14. *Cf. United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

We hold there was no plain error. The judge instructed the court members that argument is not evidence. He also carefully instructed them on the defense of innocent ingestion, the presumption of innocence, and the prosecution's burden of proof. Additionally, the evidence of record weighs heavily in support of the conviction returned by the court members after their deliberations by secret written ballot.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, GIERKE, and WISS concur.

SULLIVAN, Chief Judge (concurring):

I note that the language of waiver found in RCM 919(c), Manual for Courts–Martial, United States, 1984, is not technically precise. *See United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Otherwise, I agree with the majority opinion and its plain-error analysis in this case. *Cf. United States v. Toro,* 37 MJ 313, 319 (Sullivan, C.J., concurring in the result).