UNITED STATES

v.

Clifford V. LAWRENCE, 590
32 0618, Corporal (E–4),
U.S. Marine Corps.

NMCM 95 01816.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 2 Nov. 1994.

Decided 18 June 1997

Wynne, J., filed a statement concurring separately.

Military Judge: J.A. Bukauskas. Review pursuant to Article 66(c), UCMJ, of Special Court–Martial convened by Commanding Officer, 3d Battalion, 8th Marines, 2d Marine Division, FMF, Atlantic, Camp Lejeune, NC.

LT Christopher J. McEntee, JAGC, USNR, Appellate Defense Counsel.

LCDR Nancy B. Jones, JAGC, USN, Appellate Government Counsel.

Before McLAUGHLIN, Senior Judge, and SEFTON and WYNNE, Appellate Military Judges.

SEFTON, Judge:

Appellant was convicted on 2 November 1994, contrary to his pleas, following a 4 day trial before a special court-martial composed of officer and enlisted members, of two specifications of assault with a deadly weapon and carrying a concealed weapon, in violation of Articles 128 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1994) [hereinafter UCMJ], respectively. He was sentenced to 90 days confinement, forfeiture of $550.00 pay per month for a period of 3 months, reduction to pay grade E–1, and a bad-conduct discharge. On 8 August 1995, the convening authority approved the sentence, and except for the bad-conduct discharge, ordered it executed.

These charges arose after appellant was informed by a friend at Camp Lejeune that appellant's car had been carjacked at gunpoint in Jacksonville, North Carolina, while it was on loan to the friend for the evening. Although he had initiated timely and appropriate contacts with local police, appellant and some friends toured the installation barracks parking areas on the following day, a Sunday, in an attempt to locate the car purportedly involved in the carjacking, and thereafter somehow resolve the crime.

Finding what they believed to be the automobile used in the crime, appellant, a Jamaican, and three friends (two of whom were also Jamaican) found the registered owner of the automobile in his barracks area. The encounter ultimately evolved into a foot chase to catch him. The owner of the car suspected to have been involved in the carjacking was wrestled to the ground, and it was during this time that appellant is purported to have first brandished a handgun, forming the basis for the first of two aggravated assault specifications.

Ultimately, the individual found by appellant and his friends and wrestled to the ground was turned over to duty personnel at that Marine's command. The uncontroverted evidence then indicates that appellant separated from the group at the duty office and had returned to the parking lot when two other Marines confronted him in an attempt to have him relinquish the handgun. His reaction in once again brandishing the handgun gave rise to the second assault finding. The third, concealed weapons charge, arose from the periods of time preceding and following the separate aggravated assault offenses.

We have examined the record of trial, the assignments of error,[1] and the Government's response thereto. Since we conclude that the second assignment of error concerning the trial counsel's argument on findings has merit, and has resulted in an error materially prejudicial to the substantial rights of the

1. I. THE RECORD OF TRIAL IS FACTUALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS FOR AGGRAVATED ASSAULT UNDER SPECIFICATIONS 2 AND 3 OF CHARGE II.

II. TRIAL COUNSEL'S SENTENCING ARGUMENT AMOUNTED TO PLAIN ERROR WHEN HE IMPROPERLY REFERRED TO APPELLANT AND TWO UNRELATED DEFENSE WITNESSES AS "JAMAICAN BROTHERS."

III. THE CONVENING AUTHORITY ERRED IN HIS ACTION WHEN HE STATED THAT ALL "CONFINEMENT IN EXCESS OF 32 DAYS WAS DEFERRED ON 5 DECEMBER 1994 AND THE DEFERMENT IS RESCINDED EFFECTIVE THE DATE OF THIS ACTION" BECAUSE THIS STATEMENT DOES NOT CLARIFY WHETHER HE INTENDED TO SUSPEND OR DISAPPROVE THE REMAINING 58 DAYS REMAINING ON THE APPELLANT'S SENTENCE TO CONFINEMENT FOR 90 DAYS. (Citations omitted.)

574

appellant, we do not reach the merits of the other assignments of error.

■ Our analysis of this assigned error best begins with a quotation of the trial counsel's rebuttal argument on findings questioned before us. It follows:

*The only inconsistencies in this case are from **three Jamaican brothers** and the lying PFC Barron.* They are the ones with the reason to alter their testimony. They're all close friends. They're obviously close friends enough to get together and go over and do this, and they're worried about trying to make sure that one of their friends doesn't get hung for what he did and that PFC Barron changing his testimony through a sworn statement he made to NIS and what he tried to get from the sworn statement from the stand.

Record at 244 (emphasis added).[2]

We approach with an admittedly preconceived notion that the trial counsel's argument, no matter how well-intended and free from racial animus, has no place in the court-martial process. The Government first argues the first portion of trial counsel's long summation to the members was "banal."[3] In a succeeding paragraph, it was deemed a "sarcastic reference to appellant and his compatriots as 'Jamaican brothers' [which] did not amount to error, much less plain error." Government Reply to Assignments of Error at 4 [hereinafter Government's Brief]. While the cold record proffers no overt indicators of sarcasm to us, the fact that on rebuttal this phrase was chosen by the trial counsel as his opening salvo leads us to believe he attached some significance to the statement.

Although trial counsel's comment here certainly does not approach the almost unfathomable depths of obvious racial animus noted in some earlier Federal decisions reviewed by us,[4] the evidence in this case discloses no familial relationship between appellant and any of the witnesses. True, as the Government argues, the record does disclose that two witnesses and appellant share a common nation of origin, Jamaica. The lack of any family connection makes the use of the term "brothers" by trial counsel unmistakably pejorative. It draws an illogical and unnecessary reference to a term most often colloquially associated, both positively and negatively, with Americans of color.[5] We are compelled to our conclusion by the total failure of other evidence of record to support a logical and legally permissible nexus. We find the only purpose the trial counsel could have had in using this terminology was an impermissible one—to cast the testimony in an adverse light based on racial stereotype. Such a connection bears no more logical nexus than would pointing out that the appellant and witnesses were all from Iowa, Montana, or California, or had a common national origin from Great Britain, Ireland, or Italy. In the words of Judge Frank of the United States Court of Appeals for the Second Circuit, a prosecutor "should not be permitted to summon that thirteenth juror, prejudice." *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 659 (2d Cir. 1946) (Frank, Circuit Judge, dissenting).

■ Our concern, however, is not simply as to whether the speaker *intended* to evoke racial animus, but instead whether his use of the questioned term might have done so even though innocently spoken. We would find

2. We must take issue with the trial counsel's assessment of the facts of the case. Missing from his recap are the affirmations of appellant's military character and character for truthfulness testified to by several of his military superiors, including his company executive officer, a Staff noncommissioned officer, and a Sergeant of Marines. *Id.* at 197–212. This removes the strict "party in interest" connotation from the case, providing at least some arguably convincing corroboration of the assertions of innocence on the weapons charges made by appellant in his sworn testimony on the merits. Record at 141, *et seq.*

3. While we likewise find it lacking in freshness or originality, we find it far from hackneyed. See THE AMERICAN HERITAGE DICTIONARY 155 (1982).

4. See, e.g. *United States ex rel. Haynes v. McKendrick*, 481 F.2d 152 (2d Cir.1973)(a prosecutor made numerous derogatory references toward "colored people" during summation).

5. We chose the term "Americans of color" neither to broaden nor narrow the widely used contemporary term of association, whether in reference to those of African, Hispanic, or Caribbean heritage, or any other group.

the questioned statement no more or less offensive depending on the race of the speaker. Our system of military justice must remain not only *actually* fair to all judged by it, but it must *appear* fair to all who observe it.

> More than just harm to the individual defendant is involved, however. For the introduction of racial prejudice into a trial helps further embed the already too deep impression in public consciousness that there are two standards of justice in the United States, one for whites and the other for blacks.

*United States ex rel. Haynes v. McKendrick*, 481 F.2d 152, 157 (2d. Cir.1973).

■ The Government argues that "[r]acial remarks in a prosecutor's argument *can* constitute a violation of an accused's right to a fair trial, and 'raising the issue of race during argument for a reason that is either illogical or of very slight and uncertain logical validity is constitutionally impermissible ...'" Government's Brief at 3 (citing *United States v. Garland*, 39 M.J. 618, 620 (A.C.M.R.1994)). We believe this authority to be accurate, and are left with the unanswered question as to what logic supports the remark in this instance. We find none.

■ We again concur with the Government's proffer that before appellant is entitled to relief under circumstances where no objection was raised at trial he must first show that the comment exceeded the bounds of permissible argument, thereby creating error. Government's Brief at 3–4 (citing *United States v. Thompson*, 37 M.J. 1023, 1026 (A.C.M.R.1993)). This argument does so by its terms, specifically through the use of the word "brothers" in the pejorative manner found in this record.

■ The second level of the proffered analysis would mandate a finding of plain error. We believe that finding is warranted in this instance as well. The Government's logic here is that raising the issue on appeal without objection below proves that it "could hardly be described as racist or inflammato-

ry." Government's Brief at 4. That logic is flawed. While we do not digress in the present case to creation of logical syllogisms such as have occupied some other courts when analyzing similar issues,[6] we are nonetheless simply unable to find a nexus between the race of anyone involved in this case and a valid consideration for the members.

■ We believe this error is both obvious and substantial, and can therefore not assume away any prejudicial impact on the jury's deliberations or on the public reputation, fairness, or integrity of the proceedings. *United States v. Jackson*, 38 M.J. 106 (C.M.A.1993); *United States v. Causey*, 37 M.J. 308, 311 (C.M.A.1993)(quoting *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986)); *see also United States v. Dudding*, 37 M.J. 429 (C.M.A.1993). Finally, in determining whether the discretion allowed under the plain error doctrine is to be exercised, we must decide if the error substantially affected a material right of appellant. *United States v. Olano*, 507 U.S. 725, 732–33, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); *see also* Art. 59, UCMJ, 10 U.S.C. § 859. Given the realities of lingering racial biases, often hidden and unspoken, we cannot determine that these remarks had no such impact. We can think of no method short of setting aside the findings of guilty below to fulfill what our obligations under the law.

■ The message from our decision should be clear. Trial counsel must avoid invocation of race in argument (and elsewhere in a proceeding) absent a logical basis for the introduction of race as an issue, and strong evidentiary support for its introduction. We recognize that two of the witnesses were asked by trial counsel to name their national origin. Despite the fact that both witnesses (and appellant) indicated they were Jamaican, we fail to ascertain what such proof adds to the trial equation beyond the superfluous injection of race in this case.

Accordingly, the findings of guilty and the sentence, as approved on review below, are

---

**6.** *See, e.g. McFarland v. Smith*, 611 F.2d 414, 416–20 (2d Cir.1979)(the court deals at length with a prosecutor's assertion that a black police officer is more likely to give truthful incriminating testimony concerning a black accused than would a police officer of another race).

set aside. The record is returned to the Judge Advocate General, and a rehearing may be ordered by the same or a different convening authority. Art. 66(d), UCMJ, 10 U.S.C. § 866; RULE FOR COURT-MARTIAL 1203(c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.).

Senior Judge McLAUGHLIN concurs. (Concurred prior to reassignment).

WYNNE, Judge (concurring separately):

The trial counsel's argument in this case was designed to appeal not only to racist but xenophobic sentiment as well. The appellant never raised the issues of race or national origin in this trial. He trusted the Marines involved to see only the color of his uniform, and to measure him only by the evidence presented. We simply affirm Corporal Lawrence's right to these expectations.