UNITED STATES, Appellee,

v.

Robert DIFFOOT, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 99–0570.
Crim.App. No. 97–0515.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 13, 2000.

Decided Sept. 20, 2000.

Cox, Senior Judge, filed dissenting opinion in which Crawford, Chief Judge, joined.

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. COX, S.J., filed a dissenting opinion, in which CRAWFORD, C.J., joined.

For Appellant: *Lieutenant Dale O. Harris,* JAGC, USNR (argued).

For Appellee: *Lieutenant Danette L. Walker,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN (on brief); *Lieutenant William C. Minick,* JAGC, USNR, and *Lieutenant Margaret E. Jolly,* JAGC, USNR.

Judge SULLIVAN delivered the opinion of the Court.

In June and August of 1996, appellant was tried by a general court-martial composed of officer and enlisted members at Camp Pendleton, California. Contrary to his pleas, he was found guilty of using marijuana, conspiracy to commit larceny, and larceny, in violation of Articles 112a, 81, and 121, Uniform Code of Military Justice, 10 USC §§ 912a, 881, and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved this sentence, except for forfeitures in excess of $583 pay per month from the completion of appellant's confinement until the execution of his discharge. The Court of Criminal Appeals affirmed the findings and sentence. *United States v. Diffoot,* No. 97–0515, 1999 WL 179613 (N.M.Ct.Crim.App. March 11, 1999).

On July 13, 1999, this Court granted review of the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED BY HOLDING THAT A "SERIES OF ERRORS" DURING THE TRIAL COUNSEL'S CLOSING ARGUMENT ON THE MERITS, INCLUDING REFERENCES TO APPELLANT'S RACE AND "GUILT BY ASSOCIATION," DID NOT AMOUNT TO PLAIN ERROR.

We hold that trial counsel's closing argument referring to appellant's alleged co-conspirators' Hispanic ethnicity and admitted criminality, and urging conviction based on the theory of guilt by association, prejudicially violated appellant's due process right to a fundamentally fair trial. *See United States v. Doe*, 903 F.2d 16 (D.C.Cir.1990); *United States v. Polasek*, 162 F.3d 878 (5th Cir. 1998).

Appellant was arraigned on June 17, 1996, at which time trial was set for August 21, 1996. R. at 7. He absented himself without authority and, thus, was not present for the remainder of his court-martial. R. at 11, 37. The charges for which appellant was tried center around an alleged conspiracy between him, Private Juarez, and Private Sorianocarcamo to steal an automobile, their larceny of that vehicle, and appellant's use of marijuana. R. at 562; Charge Sheet. The Government granted immunity to Private Juarez, Private Sorianocarcamo, and a civilian female, Ms. Maria Cervantes, in exchange for their testimony implicating appellant in the conspiracy and larceny offenses. R. at 170, 201.

Appellant's defense counsel put forth evidence raising the defense of alibi on the larceny charge and an innocent ingestion defense for the marijuana charge. R. at 276–88, 338–50, 364–75, 429–38, 456–62, 467, 495; Defense Exhibit I. Both defenses were based on the testimony of Ms. Cynthia Smith and her brother, Fred, both of whom were friends of appellant. Several Marines from appellant's unit also corroborated appellant's alibi defense. (R. 425, 456, 464) Several other Marines testified to the poor credibility of the Government's witnesses. R. at 474–75, 478–79, 482–83.

The issue on appeal concerns remarks made by trial counsel during his summation on findings. R. at 505–17. Trial counsel made the following remarks:

Gentlemen, how many times can lightning strike one person; not only in the course of a lifetime, but over the course of ten days, gentlemen. Fantastic coincidence, fantastic tragedy befell Lance Corporal Diffoot. *On the 13th, 14th, or maybe the 15th of January, he was framed for using marijuana by some evil surf punks. Ten days later, on the 24th of January, he was framed by the evil Juarez, who is an evil guy; framed by the evil Juarez, Soriano, and Maria Cervantes for stealing a car. Now, these are separate, wholly unrelated criminals.* [Evil surf punks and evil fellow Marines and friend.] They have nothing to do with each other. Yet they pick the hapless, innocent Lance Corporal Diffoot as their victim. Credibility, gentlemen, that is what this is all about. That is an incredible coincidence.

\* \* \*

Now, let's turn to the government witnesses. Gentlemen, I told you it would be ugly. These are lousy Marines. *These are criminal Marines. They're—Juarez and Soriano,* you heard, they're a Platoon Commander's worst nightmare incarnated. They come to life right there. *But who is their amigo, gentlemen? Who is their compadre? You heard it from everybody. Lance Corporal Diffoot, the three of them. All three of them, running mates.*

Now, earlier in my opening I told you or I proffered to you, *who do criminals associate with? Other criminals. Gentlemen, Lance Corporal Diffoot was intimately tied up with the other two; yet he distanced himself for this misconduct. He wasn't there. Also, by the way, he didn't use drugs. It was innocent ingestion. Gentlemen, there is something called "guilt by association." We clearly have that here.*

R. at 506–07 (emphasis added).

Defense counsel did not object to any of these comments, and the military judge did

not, *sua sponte*, give any instructions to the members regarding the above remarks. The appellate court below determined that the above comments made by trial counsel were clearly erroneous but did not materially prejudice appellant's substantial rights. Article 59(a), UCMJ, 10 USC § 859(a).

——— ——— ———

The question before this Court, 1999 WL 179613, is whether the Court of Criminal Appeals was correct in holding that certain errors made by trial counsel in his closing argument did not "materially prejudice the substantial rights of [appellant]." Article 59(a), UCMJ. The lower appellate court noted that defense counsel did not object to trial counsel's references to the common Hispanic ethnicity of appellant, R. at 492, and his alleged co-conspirators. It also noted that defense counsel did not object when trial counsel invited the members to convict appellant on the basis of his pre-offense association with these Marines, who admitted their own criminal involvement in the charged offenses.[1] Nevertheless, it found these references and argument, although obvious and substantial error, were not plain error, because there was "no reasonable possibility that any of the errors in trial counsel's argument materially prejudiced the appellant's due process right to a fair trial by affecting the members' deliberations over the evidence. Article 59(a), UCMJ." Unpub. op. at 7.

More particularly, the Court of Criminal Appeals initially concluded that trial counsel's remarks that appellant was the "amigo" or "compadre" of Private Juarez and Private Sorianocarcamo "was clearly an indirect reference to the race of the appellant and the witnesses, which had no logical relationship to any of the issues in this case." *Id.* at 4. It held, however, that these "racial remarks . . . were neither overtly pejorative in their own right, nor a subtle appeal to the prejudice of the members, when viewed in the context in which they were made. They

were two isolated racial remarks buried within a lengthy argument by the trial counsel. It is unlikely that these particular remarks had any effect, much less an unfair impact, upon the members' deliberations." *Id.* at 7.

The Court of Criminal Appeals also concluded that trial counsel's erroneous reference to "guilt by association" with admitted criminals did not materially prejudice appellant. It stated:

> While the trial counsel did use the term "guilt by association," his argument actually focused on the evidence of the appellant's own criminal misconduct in the conspiracy and larceny of the stolen vehicle. We, again, find it unlikely that the use of this term alone had any effect upon the members' assessment of the evidence.

*Id.* We disagree with the Court of Criminal Appeals' prejudice analysis and conclude that these comments by trial counsel, viewed together and in the context of the entire record of trial, did materially prejudice appellant's substantial rights. *See United States v. Grandy*, 11 MJ 270, 275 (CMA 1981) (holding that prejudice from improper trial counsel argument must be assessed in light of entire trial context); *see generally United States v. Clark*, 53 MJ 280 (2000) (concluding upon review of the entire record that the error did not materially prejudice the substantial rights of appellant); *see also United States v. Kho*, 54 MJ 63 (2000).

Turning to the record in this case, we note that the prosecution's case for conspiracy and larceny of Lance Corporal Bruno's automobile rested largely on the testimony of appellant's two alleged co-conspirators, Private Juarez and Private Sorianocarcamo. Recognizing that these two prosecution witnesses were themselves admitted criminals who were testifying with immunity, trial counsel in his opening argument attempted to justify the Government's reliance on these witnesses as unfortunate but necessary. He argued:

---

1. Despite the language of "waiver" in RCM 919(c), Manual for Courts–Martial, United States (1995 ed.), we have repeatedly held that where there is no defense objection to the prosecution's argument, we review for plain error. *See United*

*States v. Carpenter*, 51 MJ 393, 396 (1999); *United States v. Sweeney*, 48 MJ 117, 121 (1998); *cf. United States v. Causey*, 37 MJ 308, 312 (CMA 1993) (Sullivan, J., concurring).

Now, the Government would love to present a parade of witnesses, a parade of stellar, poster Marines to substantiate these charges. Unfortunately, that is not the nature of criminal activity. *As a general proposition, there are two axioms that apply to criminals and criminal activities.*

First, criminal Marines that are planning a theft, obviously they are not going to seek or solicit assistance from the Marine of the Quarter. *Second, when they do commit criminal activities, they are* either going to do it in private, away from prying eyes, away from detection; *or if they do solicit assistance, it is going to be from their peers, their friends.*

*Who are these people? Fellow criminals. That is who is going to help them.* So you have a choice. *Either they are going to go and look for members of their own ilk, fellow criminals, or they are going to do it in private so they don't get caught.* That is what this is all about. Not getting caught. That is the way this whole thing unfolded and that is the way it unraveled.

R. at 100 (emphasis added).

In other words, he properly asked the members not to disregard these witnesses' testimony simply because they admitted their own participation in these crimes. *See United States v. Rose*, 12 F.3d 1414, 1424–26 (7th Cir.1994).

Trial counsel, however, was not content to rest his case on the conspiracy and larceny charges simply on the testimony of two admitted criminals and a female companion, or his case on drug use simply on the basis of urinalysis evidence. After presentation of the defense case, he blatantly argued that appellant should be convicted of all these offenses because he was the Hispanic associate of the two Hispanic Marines who admitted committing the larceny crimes. This was a marked shift from his earlier argument, and one which improperly attempted to enhance the prosecution's case based on the defendant's race and his criminal associations. *See United States v. Doe*, 903 F.2d at

24–27; *United States v. Dickens*, 775 F.2d 1056, 1058 (9th Cir.1983). This was done during closing argument, a critical point in the trial (*see United States v. Marshall*, 173 F.3d 1312, 1317–18 (11th Cir.1999)), and in a situation where the evidence of appellant's guilt was not overwhelming. *See United States v. Polasek*, 162 F.3d at 886–87. Finally, this was done without any effort being made by trial counsel or the military judge to disavow this improper argument or limit consideration of appellant's ethnicity and associations to proper purposes. *Cf. United States v. Spriggs*, 102 F.3d 1245, 1257–58 (D.C.Cir. 1996); *United States v. Rose, supra* at 1426.

The Court of Criminal Appeals discounted these racial remarks and the guilt-by-association argument because it concluded that trial counsel actually focused his closing argument on the evidence in the case showing specific conduct by appellant. Indeed, trial counsel did heavily rely on the testimony of appellant's alleged co-conspirators, who were the principal government witnesses against appellant, and who identified him as a member of their conspiracy and as the person who actually stole the car. We note, however, that the defense called two civilian witnesses without criminal involvement in this case to establish the defense of alibi for appellant at the time of the alleged theft, and the defense of innocent ingestion. Accordingly, we disagree with the Court's conclusion that the prosecution's evidence in this case was overwhelming and that trial counsel's comments had no effect on the members' assessment of guilt.[2] *See United States v. Doe, supra* at 27–28; *United States v. Polasek, supra* at 884–85; *United States v. Irvin*, 87 F.3d 860, 866 (7th Cir.1996).

In conclusion, we note that our military justice system established by Congress in accordance with the Constitution does not permit a conviction based on an accused's race (*see United States v. Green*, 37 MJ 380, 385 (CMA 1993)), or an accused's associations. *See United States v. Sitton*, 39 MJ 307, 310 (CMA 1994). In the words stated

---

**2.** We agree with the dissent that not every racial reference in a criminal trial requires a new trial. *See Smith v. Farley*, 59 F.3d 659, 663–64 (7th Cir.1995); *United States v. Abello–Silva*, 948 F.2d 1168, 1182 (10th Cir.1991).

long ago by Judge Brosman, permitting convictions on the basis of a theory of guilt by association would establish "a principle alien to American standards of justice." *United States v. Jacobs,* 1 USCMA 209, 211, 2 CMR 115, 117 (1952); *see United States v. Adkins,* 5 USCMA 492, 499, 18 CMR 116, 123 (1955). In more recent times, a majority of this Court adopted Judge Wiss's eloquent statement on racial discrimination in the military justice system (*see United States v. Witham,* 47 MJ 297, 303 (1997)), "Racial discrimination is anathema to the military justice system. It ought not—and it will not—be tolerated in any form." *United States v. Greene,* 36 MJ 274, 282 (CMA 1993) (Wiss, J., concurring). Even in the absence of objection by defense counsel, this Court can and will act to remedy such a serious injustice and preserve the integrity of the military justice system.

The decision of the United States Court of Criminal Appeals is reversed, and the findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A new trial may be ordered.

COX, Senior Judge, with whom CRAWFORD, Chief Judge, joins (dissenting):

I disagree that the purpose of trial counsel's closing argument was to urge conviction on the basis of Hispanic ethnicity or guilt by association. Therefore, I dissent.

The question of the effect of improper prosecution argument was addressed by the Supreme Court in *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), and in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Applying these cases, the question is whether trial counsel's argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly, supra* at 643, 94 S.Ct. 1868; *Darden, supra* at 181, 106 S.Ct. 2464. In order to make this determination, we must look at the entire record in this case. *Donnelly, supra.*

### A. Hispanic Ethnicity

Trial counsel's argument related to charges against appellant for conspiring with Private Juarez and Private Sorianocarcamo (aka Private Soriano) to steal, and then actually stealing another soldier's automobile. Since appellant absented himself without authority after his arraignment, and thus was not present for the remainder of his trial, appellant's trial defense counsel raised on his behalf the affirmative defense of alibi to the larceny charge, i.e., appellant was somewhere else when the actual theft of the automobile took place.

The Government granted immunity to Privates Juarez and Soriano and a civilian female in exchange for their testimony implicating appellant in both the conspiracy and the larceny. During cross-examination of these individuals, trial defense counsel attempted to establish that they were lying about appellant's participation in the theft, thereby raising by implication the inference that appellant was not part of the conspiracy. Trial defense counsel's argument's on opening and closing supported this theory.

Presenting this alibi defense clearly put the question of the extent of appellant's relationship with Juarez and Soriano squarely at issue. Proof that appellant had little or no prior affiliation with Juarez and Soriano could only serve to decrease, in the minds of the jurors, the likelihood that appellant was involved in the theft or conspiracy and thereby increase the plausibility of appellant's alibi defense. Trial counsel took great pains to establish at trial that appellant, Juarez, and Soriano were well acquainted, and were in fact "running mates." Hence, appellant's closing argument reiterated the evidence presented at trial of this relationship.

Because of the alibi defense, as well as the conspiracy charge, there is no question that evidence of the relationship between appellant, Juarez, and Soriano was logically relevant. *See* Mil.R.Evid. 401 and 402, Manual for Courts–Martial, United States (1995 ed.). Hence, the argument itself was legally permissible, so the only question remaining is whether the use of "amigo" and "compadre"

with respect to Hispanic co-conspirators was prejudicial.

Prejudice would attach if trial counsel's argument was made for the purpose of kindling racial or ethnic stereotyping, so that a conviction would be obtained because of appellant's affiliation rather than because the evidence against him was overwhelming. In this case, we need only look at trial counsel's argument in its entirety in order to determine its intended purpose. The entire argument trial counsel made concerning appellant's co-conspirators was as follows:

> Now, let's turn to the government witnesses. Gentlemen, I told you it would be ugly. These are lousy Marines. These are criminal Marines. They're—Juarez and Soriano, you heard, they're a platoon Commander's worst nightmare incarnated. They come to life right there. But who is their *amigo*, gentlemen? Who is their *compadre?* You heard it from everybody. Lance Corporal Diffoot, the three of them. All three of them, *running mates.*

In context, trial counsel was describing the relationship between appellant, Juarez, and Soriano using several terms including the term "running mate." The words "amigo" and "compadre" are Spanish words which also can mean running mate, particularly when used in this context. This is not a situation where "amigo" and "compadre" were used in a perjorative manner to describe people of Hispanic ancestry, but rather were used to describe the relationship between co-conspirators. Such use is entirely legal. It would be an absurd result to permit trial counsel to use English terms like "running mate" but disallow use of Spanish words with the same meaning merely because witnesses are of Hispanic descent.

This case is easily distinguishable from *United States v. Lawrence*, 47 MJ 572 (N.M.Ct.Crim.App.1997). In *Lawrence*, the term "three Jamaican brothers" was used in a pejorative manner with no other logical purpose than to cast the testimony of the defense witnesses in an adverse light based upon an implied racial stereotype. It is also distinguishable from to *United States v. Doe*, 903 F.2d 16 (D.C.Cir.1990), cited by the ma-

jority. *Doe* directly supports the proposition that the entire proceedings must be examined and the argument viewed in context. *See DeChristoforo, supra* at 643, 94 S.Ct. 1868. In *Doe*, the prosecutor's argument included evidence that Jamaicans had taken over the local drug market. The Court of Appeals determined this evidence to be irrelevant and inadmissible because there was no evidence that the Jamaican defendants were connected with any Jamaican drug dealers or that Jamaican drug dealers were involved in the charged drug offenses. 903 F.2d at 27. Further, any other evidence against the accused in *Doe* for drug offenses was weak. *Id.* Under those facts, the *Doe* court found the prosecutor's argument to be both improper and prejudicial because it invited the jury to convict the defendants based purely upon a stereotype. *Id.*

There is no question that race, ethnicity, or national origin may not be used to obtain a conviction. However, the mere use of Spanish words in a case where a witness is of Hispanic descent is not a *per se* denial of due process. Defense counsel did not object to the argument and did not request a curative instruction. Further, trial defense counsel did not raise the matter of the Hispanic background of the witnesses during *voir dire.* In this context, the use of the words "amigo" and "compadre" did not deprive appellant of a fair trial.

### B. Guilt by Association

Trial counsel used the words "guilt by association" in his closing argument. However, viewed in context, I would find no error. Trial counsel argued as follows:

> Now, earlier in my opening I told you or I proffered to you, who do criminals associate with? Other criminals. Gentlemen, Lance Corporal Diffoot was intimately tied up with the other two; yet, he distanced himself for this misconduct. He wasn't there. Also, by the way, he didn't use drugs. It was an innocent ingestion. Gentlemen, there is something called "guilt by association." We clearly have that here.

Since neither Juarez nor Soriano was involved in the charge related to drug use, the argument appears to be focusing on appel-

lant's surprisingly close association with an assortment of criminal activity for which he claims innocence. This argument, it seems to me, is fair commentary on the evidence. Trial defense counsel must have thought so too, as he interposed no objection and requested neither a mistrial nor even a curative instruction.

### C. Prejudice

This is not a case where there has been a miscarriage of justice. Appellant absented himself from trial after arraignment. Then, in a veritable paroxysm of guilt and remorse, returned to military control, began serving his sentence and, most importantly, admitted guilt to the charged offenses.

In my view, under the facts and circumstances of this case, it would be a true miscarriage of justice to set aside these findings of guilt and the sentence and authorize a retrial.