# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

## No. 201600285

_____

## UNITED STATES OF AMERICA
Appellee

v.

## SEAN L. MOTSENBOCKER
Operations Specialist Second Class (E-5), U.S. Navy
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Heather D. Partridge, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic, Norfolk, VA.
Staff Judge Advocate's Recommendation: Commander Andrew R. House, JAGC, USN.
For Appellant: Commander Donald R. Ostrom, JAGC, USN.
For Appellee: Major Kelli A. O'Neil, USMC; Lieutenant Robert J. Miller, JAGC, USN.

_____

Decided 17 October 2017

_____

Before HUTCHISON, FULTON, and SAYEGH, _Appellate Military Judges_

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

HUTCHISON, Senior Judge:

In a decision issued on 10 August 2017, _United States v. Motsenbocker_, No. 201600285, 2017 CCA LEXIS 539, unpublished op. (N-M. Ct. Crim. App. 10 Aug 2017), we completed our Article 66, Uniform Code of Military Justice (UCMJ), review of the appellant's court-martial affirming the findings and sentence. On 8 September 2017, the appellant moved for _en banc_ reconsideration, citing five bases. The government opposed the motion, in

part, on 15 September 2017. The court denied *en banc* reconsideration, but granted panel reconsideration for the appellant's fifth basis for reconsideration—that we "misapplied waiver" to trial defense counsel's failure to object to a portion of trial counsel's (TC's) closing argument.[1]

In our previous opinion we concluded that our superior court's decision in *United States v. Ahern,* 76 M.J. 194 (C.A.A.F. 2017), mandated the application of waiver—vice forfeiture—to the appellant's claim that the trial counsel "made inaccurate references to law" when he "told the members that they were allowed to use their Navy sexual assault and bystander training in determining the case" contrary to a preliminary instruction from the military judge to disregard such training. *Motsenbocker*, 2017 CCA LEXIS at *30-31 (citation and internal quotation marks omitted) (alterations omitted). Upon reconsideration, we conclude that *Ahern* does not control our analysis with respect to allegations of improper argument, and after conducting a plain error review—appropriate when forfeiture vice waiver applies—we once again affirm the findings and sentence. Accordingly, Part II-B-1 and 1a of our 10 August 2017 decision are hereby withdrawn and the following substituted therefor.

## B. Prosecutorial misconduct

### 1. Legal error

The appellant alleges that the TC committed prosecutorial misconduct during closing arguments by (1) improperly introducing Navy sexual assault and bystander intervention training; (2) repeatedly calling the appellant a liar; (3) improperly bolstering the victim's testimony; (4) mischaracterizing evidence; (5) inserting the TC's opinion; and (6) shifting the burden of proof to the defense.[2]

"Prosecutorial misconduct occurs when trial counsel overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (citations and internal quotation marks omitted) (alteration in original). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

---

[1] Appellant's Motion to Reconsider *En Banc* of 8 Sep 17 at 11.

[2] Appellant's Brief of 25 Jan 2017 at 21.

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Young*, 470 U.S. 1, 7-11 (1985)). Prosecutorial misconduct in the form of improper argument is a question of law we review *de novo*. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citing *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011)). "The legal test for improper argument is [(1)] whether the argument was erroneous and [(2)] whether it materially prejudiced the substantial rights of the accused." *Id.* (citation and internal quotation marks omitted). In application, "the argument by a trial counsel must be viewed within the context of the entire court-martial[,]" and as a result, "our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *Young*, 470 U.S. at 16) (additional citation omitted). This inquiry, however, remains objective, "requiring no showing of malicious intent on behalf of the prosecutor" and unyielding to inexperience or ill preparation. *Hornback*, 73 M.J. at 160.

When a proper objection to a comment is made at trial, the issue is preserved and we review for prejudicial error. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Art. 59, UCMJ). We find the TC's comments, where preserved by objection, do not constitute prosecutorial misconduct.[3] Even assuming, *arguendo*, the TC's actions amounted to prosecutorial misconduct, the errors did not materially prejudice a substantial right of the appellant and therefore do not warrant relief.

If there is no objection to improper argument, we review for plain error. *See United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017); *Fletcher*, 62 M.J. at 179 (citing *United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004)); *see also United States v. Diffoot*, 54 M.J. 149, 151 n.1 (C.A.A.F. 2000) ("Despite the language of 'waiver' in RCM 919(c) . . . we have repeatedly held that where there is no defense objection to the prosecution's argument, we review for plain error") (citing *United States v. Carpenter*, 51 M.J. 393, 396 (1999); *United States v. Sweeney*, 48 M.J. 117, 121 (C.M.A. 1998); *cf. United States v. Causey*, 37 M.J. 308, 312 (CMA 1993) (Sullivan, J., concurring)). To succeed under that plain error analysis, the appellant must demonstrate: "'(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *United States v. Tunstall*, 72

---

[3] *See, e.g.*, *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974) (reversing the First Circuit's finding of prosecutorial misconduct because the "distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct . . . should continue to be observed.").

M.J. 191, 193-94 (C.A.A.F. 2013) (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)).

However, a recent decision by our superior court has called into question the continued applicability of plain error analysis to improper argument, not objected to at trial. In *Ahern,* the Court of Appeals for the Armed Forces (CAAF) analyzed the difference between "forfeiture" and "waiver," recognizing that courts "review[] forfeited issues for plain error" but cannot "review waived issues because a valid waiver leaves no error to correct on appeal." 76 M.J. at 197 (citations and internal quotation marks omitted). "[F]orfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." *Id.* (citations and internal quotation marks omitted). The right at issue in *Ahern* was contained in MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 304, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) and specifically provided that failure to object constitutes waiver.[4] The CAAF held that the absence of any mention of "plain error review"—when those words appear elsewhere in the Manual for Courts-Martial[5]—indicates an unambiguous waiver, leaving the court nothing to review on appeal. *Id.*

The government avers that *Ahern* also applies to RULE FOR COURTS-MARTIAL (R.C.M.) 919(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.),  which states, "[f]ailure to object to improper argument before the military judge begins to instruct the members on findings shall constitute waiver of the objection." Analyzing R.C.M. 919(c) in light of *Ahern*, our sister court came to the same conclusion. Finding that the "plain language of the rule, and our superior court's decision in *Ahern*" compelled their result, the Army Court of Criminal Appeals held that the failure to object to government counsel's closing argument constituted waiver, leaving nothing to review on appeal. *United States v. Kelly*, No. 20150725, 2017 CCA LEXIS 453, at *9 (A. Ct. Crim. App. 5 Jul 2017). Indeed, like MIL. R. EVID. 304, R.C.M. 919(c)

---

[4] *See* MIL. R. EVID. 304(f)(1) ("Motions to suppress or objections under this rule, or MIL. R. EVID. 302 or 305, to any statement or derivative evidence that has been disclosed must be made by the defense prior to submission of a plea. In the absence of such motion or objection, the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown. *Failure to so move or object constitutes a waiver of the objection*.") (emphasis added).

[5] *See, e.g.,* RULE FOR COURTS-MARTIAL 920(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (providing for "waiver" but only "in the absence of plain error"); *see also United States v. Payne*, 73 M.J. 19, 23, n.3 (C.A.A.F. 2014) (applying a plain error analysis to R.C.M. 920(f), which states that the failure to object constitutes "'waiver of the objection in the absence of plain error'").

provides no provision for plain error review. However, application of waiver—as opposed to forfeiture—when a defense counsel fails to object to improper argument of government counsel, would significantly depart from the CAAF's improper argument jurisprudence.

We also recognize that "[o]verruling by implication is disfavored and the service courts of criminal appeals must adhere to [the CAAF's] precedent even when they believe that subsequent decisions call earlier decisions into question." *United States v. Davis*, 76 M.J. 224, 228 n.2 (C.A.A.F. 2017) (citing *United States v. Pack*, 65 M.J. 381, 383–84 (C.A.A.F. 2007) (additional citation omitted)). We conclude that *Ahern* is distinguishable for the following reasons:

First, *Ahern* was not a case that involved allegations of improper argument under R.C.M. 919(c); rather, it dealt specifically with waiver as it applied to MIL. R. EVID. 304. As such, the defense counsel in *Ahern* had numerous opportunities to object to the admission of the evidence at issue both before and during the trial. *Ahern*, 76 M.J. at 198. Yet, Ahern's defense counsel did not contest a government motion in limine to admit the evidence, and later affirmatively stated he had no objection to the admission of that evidence. *Id*.[6]

Second, the CAAF decided *Ahern* less than three months after deciding *Pabelona*, but did not cite or otherwise reference *Pabelona*, much less explicitly discuss any impact of its holding in *Ahern* on review of allegations of improper arguments—unobjected to at trial. *See Pabelona*, 76 M.J. at 11 ("Because defense counsel failed to object to the arguments at the time of trial, we review for plain error.") (citation omitted).

Consequently, upon reconsideration, we conclude *Ahern* is distinguishable from the case at bar and does not mandate the application of waiver.[7] Instead, we adhere to the longstanding precedent reaffirmed in *Pabelona, Fletcher,* and *Diffoott* and apply a plain error analysis to those allegations of improper argument not preserved by objection.

---

[6] MIL. R. EVID. 105 places "full responsibility upon counsel for objecting to or limiting evidence." *Ahern*, 76 M.J. at 198 (citation omitted).

[7] We note a significant difference between applying waiver under MIL. R. EVID. 304 after an accused fails to object to evidence of a confession or admission prior to the entry of pleas, and R.C.M. 919(c) which requires objections be immediately recognized and made during closing argument.

a. Introducing Navy training against military judge's instruction

"An accused is supposed to be tried . . . [on] the legally and logically relevant evidence presented." *United States v. Schroder*, 65 M.J. 49, 57 (C.A.A.F. 2007). Thus, "[t]he prosecutor should make only those arguments that are consistent with the trier's duty to decide the case *on the evidence*, and should not seek to divert the trier from that duty." ABA CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION 3-6.8(c) (4th ed. 2015) (emphasis added). As a result, a court of appeals may find prosecutorial misconduct where the TC "repeatedly and persistently" violates the RULES FOR COURTS-MARTIAL and MILITARY RULES OF EVIDENCE contrary to instructions, sustained objections, or admonition from the military judge. *Hornback*, 73 M.J. at 160.[8]

Here, the appellant contends the TC "ma[de] inaccurate references to law"[9] when he "told the members that they were allowed to use their [Navy sexual assault and bystander] training in determining the case"[10] contrary to a preliminary instruction from the military judge to disregard such training.[11]

Throughout the course of the entire proceeding, the TC mentioned the Navy sexual assault and bystander training on three occasions—the first during cross-examination of a character witness for the defense, Petty Officer First Class J.D.:

> Q: Now, OS2 Motsenbocker – did he receive any training regarding bystander awareness?
>
> A: Yes, we all have.
>
> Q: Can you summarize briefly what is that? What does that training entails (sic)?

---

[8] *See*, *e.g.*, *United States v. Crutchfield*, 26 F.3d 1098, 1103 (11th Cir. 1994) (finding prosecutorial misconduct in repeated violation of Federal Rules of Evidence 404, 608, and 609, where such violations "continued even after the court instructed the prosecutor as to their impropriety").

[9] Appellant's Brief at 23.

[10] *Id.* at 26 (footnote omitted).

[11] Record at 146. ("As members, in the naval service, we have all received extensive training during recent years on the issue of sexual assault in the military. During that training, we are provided definitions and policies regarding sexual assault. Any definitions, explanations or policies provided during that training must be completely disregarded by you in this criminal trial.").

A: Bystander Intervention would be basically if you see something wrong happening. It's our duty to step in and stop it before it gets out of hand.

Q: And that pertains specifically to sexual assaults, right?

A: Yes.

Q: When you see somebody drunk who's maybe in a compromised position we're supposed to protect them, right?

A: Yes, sir.

Q: We're not supposed to have sex with people in compromised positions, right?

A: Yes, sir.[12]

Later in closing argument, the TC argued that "[s]omething overcame his discipline, his self-control, *training* that he's undergone with the Navy." He further argued that in addition to using common sense, the members were "allowed to use your *training*. . . . your knowledge and experience in determining this case."[13] Immediately following this statement, however, the TC warned the members that any sexual assault prevention and response (SAPR) training "is out the window" and to only apply the law as read and provided to them by the military judge.[14]

Concluding his closing argument, the TC arguably reintroduced bystander intervention training when he argued the appellant "was not looking out for a shipmate in need, at all."[15] He again emphasized the appellant's sexual desires "trumped all the *training* that everyone in the Navy gets about sexual assault" before asking the members to return a guilty verdict.[16]

---

[12] *Id*. at 671-72.

[13] *Id*. at 766, 768.

[14] *Id*. at 768 ("Now, the judge just read you the instructions, that is, the law. That is what sexual assault is. That is what abusive sexual contact is. I'm sure that you all have preconceived notions about what consent means, what sexual assault means, what abusive sexual contact means. We've all been through different SAPR Trainings. You've heard people saying things like, one drink and you can consent. *All that stuff is out the window*. That piece of paper that you, have in front of you those pages, that's the law that you need to apply, here, today.") (emphasis added).

[15] *Id*. at 794.

[16] *Id*. at 795 (emphasis added).

In conducting our plain error review, "we need only address the third element of plain error because, even were we to assume error, we see no evidence that the trial counsel's arguments" regarding Navy sexual assault and bystander training resulted in material prejudice to any of the appellant's substantial rights. *Pabelona*, 76 M.J. at 12. Although we do not condone a TC's references to Navy Sexual Assault Prevention and Response SAPR training during courts-martial, the military judge correctly issued the instruction for the members to disregard this training, and the TC reiterated that message during his closing argument. Not only do we presume the members follow the instructions of the military judge, *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000), but the appellant's repeated failure to object also indicates "that either no error was perceived or any error committed was inconsequential[,]" *United States v. Sittingbear*, 54 M.J. 737, 740 (N-M. Ct. Crim. App. 2001) (citation omitted).[17]

For the reasons stated in our 10 August 2017 decision and in this reconsideration, of Part II-B-1 and 1a of that decision, we again affirm the findings and sentence.

Judge FULTON and Judge SAYEGH concur.

For the Court



R. H. TROIDL
Clerk of Court

---

[17] We conducted a similar plain error analysis in our prior decision as an alternate resolution even if waiver did not apply. *Motsenbocker*, 2017 CCA LEXIS 539, at *33 n.63.